[Civ. No. 20216.   Second Dist., Div. Three.   Nov. 12, 1954.]

FRANK T. HICKEY, INC. (a Corporation), Respondent, v. LOS ANGELES JEWISH COMMUNITY COUNCIL (a Corporation) et al., Appellants.

Glickfeld & Goldstein for Appellants.

Prentiss Moore for Respondent.

VALLÉE, J.—Appeal by defendants from a judgment in favor of plaintiff for money and for a decree of foreclosure of a mechanic's lien. The dispute involves charges made by plaintiff for claimed extra labor, material, and equipment furnished under a subcontract with defendant Contracting Engineers Company for the construction of a building for defendant Los Angeles Jewish Community Council.

On May 2, 1950, defendant Contracting Engineers Company, a partnership, as general contractor, and defendant Los Angeles Jewish Community Council, a corporation, as owner, entered into a contract for the construction of the Jewish Community Council Building on the corner of Vermont and Clinton Avenues, in Los Angeles. The building was to consist of two wings, one on Vermont and one on Clinton, with a rotunda connecting the two. On May 15, 1950, plaintiff, a corporation, and the general contractor entered into a subcontract whereby plaintiff agreed for $31,200 to: (1) remove trees, except those designated by the architect; (2) remove foundations from temporary buildings and old concrete residences; (3) demolish and remove walls, walks, and paving from the site; (4) excavate by machine for the building, including footings; (5) excavate and grade to

one-tenth foot, plus or minus, for parking area (the parties agree this meant 10 inches); and (6) stockpile material for backfill and haul remainder away. The subcontract provided: "Unit Price for Machine Excavation $.90 per cu. yd. Unit Price for Machine Back Fill $.45 [per cu. yd.]." The parties contemplated and plaintiff computed its bid for the job on the basis that the dirt needed for the backfills would be excavated from the site, that more dirt would be excavated than would be needed for the backfills, and that the excess would have to be hauled away.

The subcontract provided: "No modification of the contract price shall be made and no work of lesser value than that called for in the plans and specifications shall be accepted, except upon written change order signed by one of the partners of the contractor." It also stated that the subcontractor waived any and all claims on the general contractor for damages for any act, omission or delay caused by the contractor, the owner, or any other subcontractor, and undertook the work subject to all conditions as they then existed or may arise. The plans and specifications were incorporated by reference into the subcontract. The prime contract provided for completion of construction in 11 months. Plaintiff commenced work on May 22, 1950, but because of delays— not due to its fault—it was unable to complete the job until November 30, 1951, 18 months later.

Nine temporary buildings were located on the premises and walks connected them. Plaintiff was not told by what particular date the buildings would be removed. They remained on the premises during the greater part of the time that construction was going on. Community Council used the property during the entire period and continued the operation of its business as a community center without interruption; only when it was able to move into the new building were seven of the older buildings and the walks demolished.

On October 31, 1951, plaintiff billed the general contractor (Invoice 9475) for $1,350—removing 900 cubic yards from the site at the rate of $.90 a cubic yard plus $.60 a cubic yard for extra distance the dirt had to be hauled—claimed to be extras. On November 30, 1951, plaintiff billed the general contractor (Invoice 9489) for $2,700—hauling 3,000 cubic yards to the site between July 31 and September 13, 1950, at $.45 a cubic yard, $1,350, and removing an equal amount from the site in November 1951, at $.45 a cubic yard, $1,350— claimed to be extras. On December 4, 1951, plaintiff billed

the general contractor (by letter) for five items of extras totaling $3,422.69—(1) increase in labor, $95.15; (2) increase in dump truck rentals, $919.39; (3) increase in shovel and truck crane rental rates, $313.15; (4) additional cost of tree removal, $295; (5) additional charge for removing the 3,000 cubic yards of material set forth in Invoice 9489 because of extra distance to disposal area, $.60 a cubic yard, $1,800.

On December 26, 1951, the general contractor recorded his notice of completion. On January 23, 1952, plaintiff filed a mechanic's lien for $8,841.50. On February 1, 1952, the general contractor tendered plaintiff a check for $1,310.53[1] in full satisfaction, which was refused by plaintiff and returned.

On April 21, 1952, plaintiff brought this suit for $8,841.50 and foreclosure of its mechanic's lien.

Defendants denied that plaintiff had performed labor and furnished equipment as extras in any sum greater than $890.12, which had been paid. They alleged plaintiff did not, before performing the items of alleged extra work, secure a written order signed by the Community Council, bearing the approval of the architect and the acceptance endorsement of the general contractor, as required by the specifications.

Defendants also pleaded a counterclaim alleging that the following work was not performed and materials and equipment were not furnished by plaintiff as required by the subcontract: (1) the removal of all top soil from the building site and its storage in separate piles, $300; (2) the failure to strip the existing surface for the parking area to a depth of 10 inches, $2,600; (3) the removal of approximately 25 lineal feet of the retaining wall at the southwest corner of the property, $250; (4) removal from the site of approximately 2,171 cubic yards of excavated materials, $976; (5) failure to do "all general excavating and finish the excavation for all . . . curbs, concrete walks, drives," $104.

The court found that plaintiff performed all of the work to be performed under the subcontract with the exception of (4) and (5) and allowed as an offset $600 and $104, respectively. The court also found that each item of extras was authorized, requested, and accepted by defendants and that

---

[1]The general contractor admitted it had authorized four additional charges totaling $890.12; which when added to the contract price of $31,200 made a total of $32,090.12. Of this total, $30,721.31 had been paid plaintiff. Therefore, the difference of $1,368.81 less a credit of $58.28, or $1,310.53, was offered plaintiff.

the requirement of a written order for each item of extra work was complied with in each instance by defendants orally ordering each item of extra work and by accepting each item of work upon its completion, and that the reasonable value of the extras was $7,472.69. Judgment was for plaintiff for the full amount of its claim, $8,841.50,[2] together with interest from January 5, 1952, of $696.30, plus $2.40 for verifying and recording the lien, less the setoff of $704, or $8,836.20; and decreed foreclosure of the lien. Defendants appeal from the judgment with the exception of the award of $704 on their counterclaim.

Defendants contend the court erroneously found that plaintiff was entitled to $7,472.69 as the reasonable value of the so-called extras. They assert: (1) they did not order any of the claimed extras, nor did they accept any of them; (2) the claimed extras were called for by the contract; (3) increased costs are not extras; (4) plaintiff is not entitled to damages by reason of any delays in construction; (5) the amount found due for the alleged extras is erroneous; (6) the court erred in limiting their recovery on the counterclaim.

Defendants concede that the labor for which payment is sought was actually performed and that the backfill was supplied. They accept the finding that the charges were reasonable, and the record discloses that the benefits of the labor and material have accrued to the premises. Defendants rest their contentions on the provision of the contract requiring written change orders. ■ The parties may, by

---

[2] Plaintiff's claim and the trial court's award of $8,841.50 was made up of:

| | | |
|---|---|---|
| 1. Admitted balance | | $1,368.81 |
| 2. Charges for extras: | | |
| a) Invoice No. 9475, dated Oct. 31, 1951— Removal of fill material hauled in for Rotunda. 900 cu. yds. at $1.50 per cu. yd. | $1,350.00 | |
| b) Invoice No. 9489, dated Nov. 30, 1951. | | |
|    1) Additional backfill for wings 3,000 cu. yds. at $.45 per cu. yd. | 1,350.00 | |
|    2) Removal of fill material 3,000 cu. yds. at $.45 per cu. yd. | 1,350.00 | |
| c) Letter of December 4, 1951 | | |
|    1) Increased labor costs | 95.15 | |
|    2) Increased charges for truck rentals | 919.39 | |
|    3) Increased charges for crane rentals | 313.15 | |
|    4) Additional tree removal | 295.00 | |
|    5) Additional cost of hauling extra 3,000 cu. yds. at $.60 per cu. yd. | 1,800.00 | 7,472.69 |
| | | $8,841.50 |

their conduct, waive such a provision with the result that the subcontractor does extra work without a written order. If the circumstances indicate that the parties intended to waive the provision, the subcontractor will be protected. (9 Cal.Jur.2d 296, § 13.)

The subcontract contemplated that plaintiff would excavate material from the building site, stockpile it, and use it for backfill on the site. Because of conditions created by the owner and the general contractor, plaintiff was compelled to remove the material from the site and thereafter obtain backfill from sources away from the site. Backfilling was done in August and September, 1950. There was no material available for backfilling at that time since plaintiff could not excavate. When plaintiff's superintendent advised the general contractor that it would be necessary to get the dirt away from the site, the latter said he had no remedy but "The job has to go on and we must have fill in the building." In November, 1951, the temporary buildings used by the Community Council had been removed; plaintiff was able to excavate but was compelled to haul the material away from the site because there was no more backfilling to be done. Defendants having compelled plaintiff to obtain dirt for backfilling away from the site and to haul an equivalent amount away, the evidence supports the finding that defendants authorized, requested, and accepted each item of extra work for which an award may be made.

Extra work as used in connection with a building contract means work of a character arising outside and entirely independent of the contract—something not required in its performance, not contemplated by the parties, and not controlled by the contract. (*Wilson* v. *Salt Lake City*, 52 Utah 506 [174 P. 847]; *Shields* v. *New York*, 84 App. Div. 502 [82 N.Y.S. 1020].) Whether a contractor is entitled to additional compensation for extra work depends generally on the construction of the particular contract and whether it is included in the contract price. The construction placed on the contract by the parties is of great weight, and where they agree on additional compensation for certain work it precludes a claim that the original contract requires the performance of such work. (*Board of Comrs. of Fulton County* v. *Gibson*, 158 Ind. 471 [63 N.E. 982].)

When plaintiff computed its bid, the parties contemplated it would use dirt excavated from the job site as backfill. When it found none was available, its superintendent discussed

the problem with the general contractor. The tenor and the result of the discussion were that the bringing of fill from off the site and the removal of dirt from the site were not covered by the contract. The construction put on the contract by the parties supports the finding that plaintiff performed extra work and furnished extra equipment when it found it was necessary to bring 3,000 cubic yards of dirt to the job from off the site.

■ Where the extra work and materials furnished are of the same character as the work and materials named in the contract, the general rule is that they are to be paid for according to the schedule of prices fixed by the contract. (17 C.J.S. 854, § 371 h.) ■ The contract provides, "Unit Price for Machine Excavation $.90 per cu. yd. Unit Price for Machine Back Fill $.45 [per cubic yard]." The unit price of $.90 included the shovel operation in excavating, loading the dirt onto trucks, and hauling it away. The unit price of $.45 included the shovel operation of loading the dirt onto trucks, depositing it in place on the site, and spreading and compacting it. It did not include excavation or hauling. Therefore $.45, the difference between the schedule of prices, was the cost of excavation and hauling. One of the charges stated in Invoice 9489 was for bringing 3,000 cubic yards of backfill onto the site at the rate of $.45 a cubic yard—a total of $1,350. While the applied rate is correct for hauling the extra dirt onto the premises, it is erroneous as to the amount of dirt for which defendants should be charged. It was stipulated that plaintiff did not have to pay anything for 1,000 of the 3,000 cubic yards or for the transportation of it. Plaintiff may not recover from defendants for this amount of backfill. It was error for the trial court to award plaintiff $1,350 for this item. One thousand cubic yards at $.45 is $450. The amount should have been $900 ($1,350 less $450).

■ It was contemplated that more dirt would be excavated than would be needed for backfilling and that the excess would have to be hauled away. The bringing of 3,000 cubic yards of material onto the job site added to the excess and thereby necessitated the removal of a like amount. Plaintiff included in its Invoice 9489 a charge for the removal of 3,000 cubic yards, at the rate of $.45 a cubic yard. This charge for additional costs was correct and plaintiff is entitled to recover $1,350 for this extra work.

■ Haddock, by agreement between the general con-

tractor and plaintiff, brought 900 cubic yards of dirt to the job from off the site, for which it was paid by the general contractor. This resulted in the necessity of removing the same quantity from the site before completion of the contract. Invoice 9475 was for the removal of 900 cubic yards in October, 1951. Plaintiff billed the general contractor at the rate of $.90 a cubic yard, plus $.60 a cubic yard for the extra distance the dirt had to be hauled due to the late date of completion of the contract. Under the contract, plaintiff had the duty to excavate and it was contemplated that all of the excavated dirt would not be needed for backfilling. The bringing of the 900 cubic yards of dirt did not require the excavation of extra—900 cubic yards—dirt; it only necessitated the removal of an additional 900 cubic yards. The schedule of prices provides that plaintiff should be allowed the difference of $.45 for hauling. Therefore, plaintiff is only entitled to recover for the removal of 900 cubic yards of dirt at the rate of $.45 a cubic yard. It was error to award plaintiff $.90 a cubic yard for this item instead of $.45 a cubic yard, or $405.

Ordinarily, as between a subcontractor and the contractor who is in control of the work being performed, the law places the latter under an obligation to make good all losses consequent on delays in the progress of the work not attributable to the subcontractor. However, this rule may be made inapplicable by the express provisions of the subcontract. (*Stehlin-Miller-Henes Co.* v. *City of Bridgeport,* 97 Conn. 657 [117 A. 811]; *Walter R. Cliffe Co.* v. *Du Pont Engineering Co.,* 298 F. 649.) Here the subcontract expressly states that plaintiff waives any and all claims on the general contractor for damages for any act, omission or delay caused by the general contractor, or the Community Council, and undertakes the work subject to all conditions as they now exist or may arise. This waiver of all claims for damages due to any delay estops plaintiff from recovering the additional cost of hauling the excavated material a greater distance to the new disposal site. It was error to allow plaintiff the additional rate of $.60 a cubic yard, or $540.

Defendants contend that because a change had been made in the grade of the parking area which resulted in the retention on the job site of 2,171 cubic yards of more dirt than would have been kept had the plans not been changed, plaintiff did not remove an additional 900 cubic yards from the premises. The trial court found that 2,171 cubic yards of

fill material was not removed, and awarded $600 to defendants on their counterclaim for this modification. Defendants concede plaintiff brought 900 cubic yards of material from off the site. If the equivalent amount had not been removed but remained on the site, then only the difference of 1,271 cubic yards of dirt from the site would have been required and retained. Only needing a total of 2,171 yards of dirt for the change in grade, anything in excess would have to be removed. Therefore, the equivalent of 900 cubic yards of dirt excavated from the site and contracted for would have been hauled away; and defendants would have been entitled to recover as an offset for only 1,271 cubic yards of fill. The court gave defendants $600 on their counterclaim because plaintiff failed to remove 2,171 cubic yards of dirt. There is no appeal from this part of the judgment. Defendants' argument would allow them to be compensated for 3,071 cubic yards.

The risk of fluctuations in the market price of labor and materials is a burden which a subcontractor contemplates and assumes when he makes a contract. He takes the risk of an increase of the prices of labor and materials. (9 Am. Jur. 42, § 56.) Plaintiff could have provided for these contingencies in the contract by the inclusion of an escalator clause—as costs increase so would its consideration.

Plaintiff expressly waived any rights that it might have had due to the delay in the performance of the contract. (17 C.J.S. 1060, § 502b (3) (c).) It may not recover for the alleged increases in costs of labor, $95.15; dump truck rentals, $919.39; shovel and truck crane rentals, $313.15; and hauling 3,000 cubic yards of dirt the extra distance, $1,800; as outlined in its letter of December 4. It was error to award plaintiff these items as extras—$3,127.69.

The first thing that plaintiff did in the performance of its contract was to remove certain trees that had been designated by Community Council. Seventeen months later the council required an additional 10 or 12 trees to be removed. In the letter of December 4, 1951, plaintiff billed the general contractor for $295 for removing the 10 or 12 trees. The trees designated were removed in June, 1950. At that time plaintiff and defendants orally modified the original plan as to the number and which trees were to be removed. Seventeen months later the council decided to have additional trees removed. There is no evidence that at the time the trees were removed in June, 1950, or at any

time during the interval, defendants reserved the right or expressed the intention that additional trees were to be removed. The oral modification of the contract was performed by plaintiff and accepted by defendants. The removal of the additional 10 or 12 trees was at the express request of defendants and they accepted the benefits. They will not now be heard to say that a written order was not first obtained.

Where the extra work and materials are of a different character from those specified in the contract and no price is agreed on in advance of the furnishing of the extra, the party performing will be entitled to recover what they are reasonably worth. (17 C.J.S. 854, § 371h.) Here, the contract is silent as to the amount that should be paid for removing additional trees. The trial court found that $295 was the reasonable value for the performance of this extra work.

Defendants claim that plaintiff did not remove all top soil from the building site and store it in piles, and that they should have been awarded $300 therefor on their counterclaim. The evidence supports the court's denial of this item. The Community Council's "Clerk of the Work" testified there was no top soil on the site. Defendants claim plaintiff did not strip the existing surface for the parking area to a depth of 10 inches, and that they should have been awarded $2,600 therefor on their counterclaim. The evidence supports the court's denial of this item. The "Clerk of the Work" testified he knew of no place where plaintiff should have stripped that it did not strip. Defendants claim that plaintiff did not remove a retaining wall, and that they should have been awarded $250 therefor on their counterclaim. The evidence supports the court's denial of this item. The "Clerk of the Work" testified plaintiff was to leave the wall alone. Plaintiff squared off the wall at a greater cost to it than had it been called on to remove it. The "Clerk of the Work" testified that before plaintiff left the job he (the clerk) went around with the superintendent of the general contractor and that he said to the latter, " 'Is there anything more this fellow Hickey has got to do before we turn him loose,' and the answer was, 'No, he is through.' "

The finding that the reasonable value of all of the labor, materials, and equipment furnished by plaintiff under the contract and for the extra work and equipment authorized and requested by defendants and accepted by them over and above all amounts previously paid plaintiff by defendants is $8,841.50, is not supported by the evidence. This finding

should be modified by deducting the charge for 1,000 cubic yards of fill obtained by plaintiff at no cost, $450; by deducting the overcharge for hauling 900 cubic yards of dirt—computed at the wrong rate and billed for transporting it the additional distance, $405 and $540—or $945; and by deducting the four items set out in the letter of December 4 which plaintiff was required to perform under the contract and which were not extras, $3,127.69—a total of $4,522.69. The judgment should be modified to allow plaintiff to recover the difference of $4,318.81 plus $2.40 for verification and recordation of the lien, together with interest from January 5, 1952, less the setoff of $704.

The findings of fact and the conclusions of law are amended in the respects we have indicated. The judgment is modified by reducing the amount thereof from $8,841.50 to $4,321.21, together with interest from January 5, 1952, less the setoff of $704. As thus modified, it is affirmed. The parties shall bear their own costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied November 30, 1954.