[Civ. No. 24645.   Second Dist., Div. Three.   July 12, 1961.]

MacISAAC AND MENKE COMPANY (a Corporation),
Plaintiff and Appellant, v. CARDOX CORPORATION
(a Corporation) et al., Defendants and Appellants.

Flint & MacKay and Arch R. Tuthill for Plaintiff and Appellant.

664

Frank W. Doherty, Roger Arnebergh, City Attorney (Los Angeles), Gilmore Tillman, Chief Assistant City Attorney, and Gerald Luhman, Deputy City Attorney, for Defendants and Appellants.

SHINN, P. J.—Plaintiff MacIsaac and Menke Company brought suit against defendant Cardox Corporation to recover their reasonable costs for work performed under a written subcontract, as modified by an executed oral agreement. Defendant American Casualty Company of Reading, Pennsylvania, as surety for Cardox, was joined as a party defendant. The Department of Water and Power of the City of Los Angeles was the owner of the Valley Steam Plant on which the work was done and was joined as a defendant since it held funds of $8,991.11 following service upon it of a withhold notice. Plaintiff recovered a judgment against Cardox for $15,623.79 and a judgment against both American Casualty and the department which was limited to their specific interests in the suit in the sum of $8,991.11. Interest was awarded from the date of the job completion, March 14, 1956, which was later modified to only allow interest from the date of judgment, August 27, 1959.

Defendants appeal from the judgment and plaintiff cross-appeals from the modification of the judgment allowing interest only from the date of the judgment.

The findings are 42 in number. They comprise 17 pages of evidentiary facts in the clerk's transcript. When reduced to their essentials they establish the following: Cardox manufactures and installs its own type of fire protection systems; typical systems are of overhead construction except where, in specified hazard areas, undercover or underground piping is called for; Cardox furnished plaintiff drawings and specifications showing clearly indicated undercover or underground piping in limited areas, and overhead installation in the remainder; plaintiff bid on the work in reliance upon these drawings and specifications and contracted to do the work in accordance therewith. However, the contract of Cardox with the department was upon specification Number 8736 of the department which provided that the contractor should "arrange, locate, using pipe trenches wherever possible" and plaintiff's contract called for installation in accordance with Cardox's drawings and specifications and also specification Number 8736 of the department. As the work progressed in accordance with plaintiff's contract and the drawings of

Cardox, the department came forward with long-delayed drawings which called for extensive undercover and underground installation far more extensive than was shown on the drawings and specifications of Cardox and considerably more expensive. As a result of negotiations between plaintiff and Cardox it was orally agreed that Cardox would stand the extra expense if plaintiff would do the extra work; plaintiff completed the work in reliance upon the promise of Cardox and Cardox refused to pay. The judgment holds Cardox to its promise. There was ample evidence of the promise and of plaintiff's reliance upon it.

If the findings had been drawn and plaintiff's case had been briefed on the theory that plaintiff's rights rest upon the oral contract, the case on appeal would have been greatly simplified. All that preceded the oral contract would have had little significance.

Inasmuch as it is earnestly contended that the oral agreement was not supported by a consideration, was not as broad as the court found it to be, and was not binding upon Cardox, these arguments may be answered by reference to the following evidentiary facts found.

In April 1955, Cardox was bidding for the installation of a fire protection system in Units (3) and (4) for the Department of Water and Power of Los Angeles City. Cardox supplied to plaintiff its drawings Numbers FE33677 and FD33364 and certain Cardox mechanical specifications for part of the work. In these drawings, by means of broken lines, it was designated that in some areas piping and fittings were to be placed underground or undercover. By means of solid lines it was designated that in all other areas in Units (3) and (4), piping and fittings were to be placed overhead in the open and above floor levels.

Before bidding the job, plaintiff inspected the job site in company with a representative of Cardox. Cardox's agent represented to plaintiff that the proposed installation would be the typical Cardox installation, and that the piping, fittings and equipment were to be located overhead, except that in certain areas, which were not then shown on any drawings except those of Cardox, they would be placed undercover. Plaintiff had previously installed for Cardox more than one hundred fire protection systems of the overhead type.

On April 19, 1955, plaintiff submitted a written bid of $18,890, including overhead expense and fee, in accordance

with drawings FE33677 and FD33364 and the Cardox specifications to do the work in 56 calendar days.

On May 31, 1955, Cardox entered into a written contract with the department of water and power agreeing to install the low pressure carbon dioxide system in Units (3) and (4) in accordance with the department specification Number 8736, and to complete the work in 120 calendar days.

In reliance upon the aforementioned Cardox drawings and verbal representations, a subcontract was executed by plaintiff on June 8, 1955, which recited that plaintiff's work was to be performed in accordance with the Cardox drawings FE and FD, plaintiff's bid letter of April 19, 1955, the department specification Number 8736 and Cardox's general and special specifications.

The department specification Number 8736 in addition to requiring that the contractor should "arrange, locate, using pipe trenches wherever possible," further required that Cardox prepare drawings showing details of the proposed installation and submit them to the department for its approval, and that the system be installed in accordance with the approved drawings. The subcontract further provided that any changes or work involving extra compensation had to have written authority from Cardox.

Several days before July 18, 1955, Cardox directed plaintiff to commence work, even though at that time Cardox had not obtained the department's approval of detail drawings, and even though Cardox's mechanical equipment, which was to be installed by plaintiff, had not been delivered to the job site.

Cardox failed to furnish approved detailed drawings and on July 29, 1955, with the consent of Cardox, the department agreed to furnish plaintiff with approved detailed drawings. Cardox directed plaintiff to perform its work in accordance with the department's specifications which were furnished at various times between July 29, 1955, and September 10, 1955. The department's drawings required a large portion of plaintiff's installation to be placed in trenches.

The installation in pipe trenches was a substantial deviation from the subcontract. It required plaintiff to acquire additional labor, materials and equipment and it substantially increased the cost of performing the work. Also, Cardox failed to deliver the mechanical equipment to the job site prior to August 23, 1955, and then it only delivered various portions thereof at various times thereafter. In addition, the department's substituted drawings were not furnished simul-

taneously, but were furnished at various times, which interfered with the scheduling of work and caused further delays and interruptions.

On September 14, 1955, plaintiff advised Cardox by letter that the cost of performing the work had been substantially increased, due to Cardox's failure to provide approved drawings and equipment and that unless plaintiff receive a definite commitment from Cardox that they would pay to plaintiff the necessary and reasonable cost of performing the work, as required, plaintiff would stop work. On September 19, 1955, plaintiff sent a night letter to Cardox stating in part that unless they received an immediate favorable reply to their letter of September 14, they would be forced to stop work. On September 22, 1955, plaintiff's president telephoned an officer of Cardox in Chicago repeating that plaintiff would not continue on the job without a definite agreement that Cardox would pay for the reasonable cost of the extra work to be performed. Cardox's officer orally promised to pay plaintiff the reasonable cost of its extra work, which was in excess of the amount specified in the subcontract. In addition, Cardox directed plaintiff to proceed with the work and complete the job. The amount of the reasonable and necessary cost for the work which Cardox agreed to pay was to be determined at a later date.

On September 23, 1955, plaintiff sent six change orders to Cardox so that Cardox could determine the reasonable cost of extra work. Plaintiff asked that it be sent back a signed copy of each change order for its files.

Plaintiff proceeded with the work until October 11, 1955, when, with Cardox's knowledge and approval, it stopped work because certain Cardox mechanical equipment which was needed had not arrived and the department had not completed the construction of a fuel oil service tank.

On November 1, 1955, plaintiff again wrote Cardox asking for a copy of the change orders. On November 23, 1955, plaintiff wrote Cardox asking why it had not answered any of the previous letters and why it had not sent the approved copy of the change orders. Plaintiff stated that it must have answers to its inquiries no later than December 5, 1955, unless Cardox sent a representative out to discuss the questioned items.

On November 30, 1955, Cardox sent out a representative from Chicago who was not able to give plaintiff any definite

answers. On December 16, 1955, plaintiff wrote Cardox and stated that if it stopped work as of that time it would reduce the contract by $3,500, "contingent upon the change orders which we have already submitted being approved in their entirety." On December 30, 1955, Cardox in writing rejected some of the change orders, allowed some and promised to give further consideration to others.

About February 28, 1956, Cardox furnished plaintiff with approved drawings for the uncompleted portion. Plaintiff, without waiving its claim for additional compensation, resumed work on February 28, 1956, and fully completed the job on March 14, 1956.

Defendants attack several of the court's findings, claiming they are not supported by the evidence. One finding states that plaintiff is a licensed contractor. Defendants claim that even though plaintiff alleged that it is a licensed contractor, there was no proof of such fact. The allegation was not denied. Also, defendant admitted that plaintiff was a licensed contractor in its pretrial statement. It is elementary that failure to deny is an admission of the fact alleged. (*Fuentes* v. *Tucker,* 31 Cal.2d 1, 4-5 [187 P.2d 752].)

It is further claimed that there was no evidence to support those parts of findings which state that Cardox understood and intended that the installation should be an overhead type of installation.

After carefully reviewing the record, we find ample evidence in support of the challenged findings. Cardox's drawings which were incorporated in the subcontract showed that almost all of the installation was to be of the overhead type; the overhead installation was confirmed verbally by an agent of Cardox, and Cardox's general mechanical specifications included in the subcontract depicted a typical overhead installation.

Likewise, defendants' contention that certain findings are contradictory and not supported by the evidence is without merit. One finding relates to the reasonable cost of the entire job as actually performed, another relates only to the reasonable cost of the work which was originally contemplated under the June 8th subcontract and a third finding relates only to the reasonable cost of the work of installing the piping, fittings and equipment as trench installation instead of an overhead installation. The three findings are not contradictory. These findings are fully supported by the

record and may not be disturbed. (*Brewer* v. *Simpson*, 53 Cal.2d 567, 583 [2 Cal.Rptr. 609, 349 P.2d 289].)

██ It is next urged that the trench installation of the pipes cannot be considered extra work for the reason that it was required under the subcontract, as stated in the department specification Number 8736 provision, that "The Contractor shall arrange, locate, using pipe trenches wherever possible. . . ." We fail to agree.

In reviewing the record we find substantial support for the trial court's determinations that Cardox, by means of its drawings, its mechanical specifications and its oral representations, designated, informed and instructed plaintiff, at the time of its bid and also at the time plaintiff executed said subcontract, of the locations of the areas in which piping, fittings and equipment were to be installed, and whether the same were to be placed overhead or underground or in pipe trenches; that by said drawings and representations Cardox informed and instructed plaintiff that except for the piping and fittings to be placed underground or undercover in the area of Hazard (4C) and (4D) as shown, all other piping, fittings and equipment were to be located and installed overhead; that plaintiff tendered its bid of April 19, 1955, and executed said subcontract of June 8, 1955, upon the basis of and in reliance upon Cardox's drawings, specifications and verbal representations.

██ As a general proposition, it is well recognized that where plans and specifications induce a contractor to reasonably believe that certain indicated conditions actually exist and may be relied upon in submitting a bid, the contractor is entitled to recover the value of such extra work made necessary by the existence of different conditions. (*Gogo* v. *Los Angeles County Flood Control District,* 45 Cal.App.2d 334, 341 [114 P.2d 65].) The facts of the instant case are well within the scope of this principle.

Plaintiff was orally advised by the department on June 24, 1955, that the piping installation was to be a trench installation and Cardox at this time instructed plaintiff to make a trench installation in accordance with the department's drawings instead of according to Cardox's drawings and prior instructions. Accordingly, plaintiff modified its plans and fully completed the work on March 14, 1956, and the same was approved and accepted by Cardox.

██ Cardox places reliance on the provision of the subcontract which provides that any work involving extra com-

pensation shall not be proceeded with unless written authority is given by Cardox. But under section 1698 of the Civil Code, an executed oral agreement may alter an agreement in writing, even though, as here, the original contract provides that extra work must be approved in writing. The oral request for and approval of extra work by Cardox was, when fully performed, an oral modification of the written June 8th subcontract. (*Miller* v. *Brown*, 136 Cal.App.2d 763, 775 [289 P.2d 572].)

The trial court determined that the September 22nd agreement was a fully executed oral contract modifying the subcontract. ▇▇ Whether a written contract has been modified by an executed oral agreement is a question of fact (*Keeble* v. *Brown*, 123 Cal.App.2d 126, 132 [266 P.2d 569]), and the finding, in the instant case, is supported by substantial evidence.

The oral agreement was fully performed on one side and supported by the consideration found in the mutual obligatory promises of plaintiff to perform and of Cardox to pay for the extra work.

▇▇ An oral agreement fully executed by one party, if supported by consideration, will constitute a valid modification of a prior written agreement. (*D. L. Godbey & Sons Const. Co.* v. *Deane*, 39 Cal.2d 429, 433 [246 P.2d 946].)

▇▇ Defendant cannot be heard to say that a written order was not first obtained as required under the subcontract. Cardox by its acts and conduct waived and is estopped to rely upon the subcontract provision requiring its prior written approval before proceeding with work involving extra compensation. (*Frank T. Hickey, Inc.* v. *Los Angeles J. C. Council*, 128 Cal.App.2d 676, 683 [276 P.2d 52].)

▇▇ Defendants next claim that even if they are liable for the extra work actually performed by the plaintiff their liability is limited to the sum of $8,991.11. They base their contention upon a written receipt dated April 26, 1956, which was signed by plaintiff. This receipt, drawn up by Cardox, acknowledged payment of $6,139.25 as payment in full of all sums due plaintiff from Cardox, other than the sum of $8,991.11 over which there was a dispute. Defendants contend that plaintiff in order to receive its final progress billing payment of $6,139.25 signed the receipt as satisfaction that the cost for the extra work would be limited to $8,991.11.

There are numerous reasons why defendants' claim must

fail, but we will dislodge it of any merit by merely pointing out that the receipt, the alleged accord agreement, is not supported by any consideration in that the payment of $6,139.25 was admittedly due and owing; therefore, the alleged accord and satisfaction agreement must fail for lack of consideration. (*Egan* v. *Crowther*, 74 Cal.App. 674, 680 [241 P. 900].) Also, there was substantial evidence to support the trial court's determination that the agreement did not amount to an accord and satisfaction irrespective of the question of consideration, and it may not be disturbed on appeal. (*Moore* v. *Satir*, 92 Cal.App.2d 809, 812 [207 P.2d 835].)

Finally, the defendants urge upon this court the claim that the means used to compute plaintiff's extra costs were improper in that plaintiff failed to properly prove its "extra costs"; that there was no breakdown as to the extra work and extra hours required to place the piping in trenches, or of man hours lost because of Cardox's delayed shipments of materials. We find no support for this claim.

The trial court in light of the September 22, 1955, oral modification of the subcontract found that the reasonable cost of the work actually performed under the existing circumstances and conditions was $35,362.14. This figure represents the direct costs, a composite of fourteen particularized items, which totaled $30,044.30. To this figure was added overhead expense of $2,103.10 and the subcontractor's fee of $3,214.74; therefore, the figure of $35,362.14 represents the total cost, including the subcontractor's overhead expense and fee. These two items were properly included in the amount that represented reasonable compensation. Such was the trial court's construction of the oral agreement. In determining reasonable costs the court considered the fact which is of common knowledge that the customary charges of those who do construction work include a reasonable amount for overhead expense and for profit.

Cardox paid the plaintiff the original subcontract price of $18,890 plus the sum of $848.35 representing certain approved overtime labor expense. The trial court then deducted the amount actually paid by Cardox, $19,738.35, from the total reasonable cost of the work actually performed, awarding judgment against Cardox in the sum of $15,623.79, of which the amount of $8,991.11 is against the department and the surety according to the claims made by plaintiff. Interest was to run from the date of the job completion, but was later modified to run from the date of judgment.

Plaintiff's books of account were received in evidence. They showed the cost under each of the following classifications:

```
"Labor ...............................  15,020.15
    Insurance & Taxes ...................   1,802.42
    Welfare Contributions ...............     450.60
    Small Tools .........................     459.24
    Material ............................   5,755.22
    Supplies ............................     468.26
    Equipment ...........................   2,313.70
    Trucking ............................     948.96
    Set Tank ............................     253.63
    Welders' Tests ......................     316.27
    Galvanizing Materials ...............     277.85
    Painting ............................   1,550.00
    Misc. Job Expense ...................     106.76
    Services—Dept. of W. & P. ...........     321.74
    Overhead expense ....................   2,103.10
    Fee .................................   3,214.74
```

TOTAL.... $35,362.14''

The court found the total to be $35,362.14. There was evidence of the cost under each of the classifications and under the original contract which the court found to total $18,890. The extra work was itemized under the same classification and found to amount to $15,623.79. Cardox had paid $19,738.35, which, deducted from $35,362.14, leaves $15,623.79, for which judgment was given. The evidence of cost was comprehensive and was not controverted. The court adopted the proper and, in fact, the only feasible method for ascertaining the balance that was due.

The point on the cross-appeal of plaintiff is that in the hearing of the motion for new trial, the court amended its findings and conclusions to provide that interest should run from the date of the judgment rather than from the date of completion of the work. Plaintiff seeks a modification of the judgment to restore the original provision awarding interest from March 14, 1956, a difference of about two and one-half years. We are of the opinion that the court correctly declined to allow interest prior to the date of the judgment. It was alleged in the complaint that Cardox had failed to supply plaintiff with approved drawings and failed to deliver mechanical equipment, thereby interfering with scheduling of the work, causing delays and interruptions in performance, and substantially increasing the cost of performing the work. The original agreement of plaintiff was to complete the

work in 56 days after June 8, 1955. Although plaintiff proceeded diligently, the work was not completed until March 14, 1956. It was undisputed that plaintiff was not responsible for any part of the delay.

The findings listed some 15 items which entered into the total cost of the work of $35,362.14 and found that each item represented the established market price of the same at the times the labor and materials were furnished, but this finding was qualified by the statement that these were the values "under the circumstances and conditions which existed during the performance of the work." Admittedly, these were not normal conditions, since the court found that the delays, changes and deviations, which we have previously mentioned, substantially increased the cost of performing the work. This increased cost, of course, was not subject to computation. Only by a judicial determination, arrived at from a consideration of all the conditions under which the work was done, could the extent to which the delays and interruptions added to the cost of the work have been ascertained. Originally, the findings read in part: "Said sum of $15,623.79 is ascertainable and has been determined from established market prices in the City of Los Angeles relating to the subject matter. The sum of $15,623.79 was due and payable to plaintiff by defendant Cardox at the time plaintiff completed said work, to wit, on March 14, 1956. Interest thereon at the rate of 7% per annum from March 14, 1956 until paid is due and owing by Cardox to plaintiff." This finding was stricken in the hearing of the motion for a new trial. Considering together the finding that the abnormal conditions existing substantially increased the cost of performing the work and the statement that the market prices found were only those prevailing "under the circumstances and conditions which existed during the performance of the work," it is clear that in amending the findings, the court took into consideration the fact that $15,623.79 did not represent what the extra work would have cost under normal conditions. This important factor, especially as respects the cost of the labor, precluded ascertainment of the cost of the work by computation, and rendered inapplicable section 3287 of the Civil Code which provides that interest runs from the date when the principal of the debt is vested in the creditor upon "damages certain, or capable of being made certain by calculation." (See *Archibald* v. *Iacopi*, 120 Cal.App.2d 666 [262 P.2d 40]; *Frank T. Hickey, Inc.* v. *Los Angeles J. C.*

*Council, supra,* 128 Cal.App.2d 676; *Hansen* v. *Covell,* 218 Cal 622, 631 [24 P.2d 772, 89 A.L.R. 670]; *Stimson* v. *Dunham, Carrigan, Hayden Co.,* 146 Cal. 281 [79 P. 968]; *Macomber* v. *Bigelow,* 126 Cal. 9, 14 [58 P. 312], and cases cited.)

As we stated in the beginning, plaintiff's claim to compensation, in addition to the amount of its bid, rests upon the oral agreement modifying the written agreement. Plaintiff refused to do work in excess of that shown on the drawings of Cardox, which it had agreed to do, unless Cardox stood the extra expense. The court found on sufficient evidence that Cardox orally agreed to pay the entire cost and that plaintiff completed the work in reliance upon the agreement. There was no dispute as to the cost.

On the appeal of defendant the judgment would be subject to attack only upon the ground that the foregoing findings were without substantial support in the evidence. No attack is made upon the findings upon the ultimate material facts.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.