[Civ. No. 25980.   Second Dist., Div. One.   Nov. 15, 1962.]

MARY F. BLEAKLEY, as Administratrix etc., Plaintiff and Appellant, v. JAMES R. CARNES, Defendant and Respondent.

Kindel & Anderson and Paul L. Freese for Plaintiff and Appellant.

Burris & Lagerlof and Stanley C. Lagerlof for Defendant and Respondent.

WOOD, P. J.—Action to establish a constructive trust in stock of a corporation, and for an accounting. Judgment was for defendants. Defendant Couper died after judgment was entered. Plaintiff appeals from the judgment as to defendant Carnes.

Appellant asserts that the court erred in concluding that defendant Carnes did not occupy a confidential relationship as to Dr. Samuel N. Bleakley, the decedent. Even if it be assumed that such assertion is correct, it would not follow necessarily that the judgment should have been for appellant. In other words, if a confidential relationship did exist between them, it would not follow as a necessary result of such relationship that judgment should have been for appellant—a question would arise as to whether defendant Carnes gained an advantage by reason of such relationship. Appellant also asserts that the court erred in not applying rules of law which were applicable under such a relationship. Of course, such rules could not be applied unless the court found there was a confidential relationship—and it did not so find. It will be assumed that appellant is contending, in effect, that the evidence is insufficient to support the judgment.

The plaintiff, Mary F. Bleakley, is the administratrix of the estate of Samuel N. Bleakley, deceased. She and Dr. Bleakley (decedent) were married March 13, 1954. He died March 15, 1956. In general effect, the basis of her claim, under her complaint, is that Dr. Bleakley had not been paid the amount of money which should have been paid to him under a written agreement that was made between him and defendant Carnes in 1939.

In 1933 Dr. Bleakley, a dentist, married Ida Carnes, and they resided in Los Angeles until her death on November 16, 1938. She had been married previously to R. J. Carnes. The defendant James R. Carnes herein is the son of Ida and R. J. Carnes. The written agreement so referred to herein (the basis for plaintiff's claim) was made in settlement of a controversy between Dr. Bleakley and James R. Carnes as to the amount of property owned by Ida, the validity of a codicil to her will,

and the manner in which distribution of her estate should be made.

At the time of Ida's death, she was the alleged owner of property described as follows: interests in four loan companies; a dwelling house in Los Angeles; furniture; automobile; and jewelry. (Apparently the loan companies were in existence at the time she married Bleakley.) One of the loan companies, so referred to, was the State Loan Company, a partnership, in Portland, Oregon. She allegedly owned 90 per cent interest in that partnership; and Carroll E. Benfeldt, who resided in Portland and operated the partnership business, owned 10 per cent interest.

By the provisions of Ida's will, she gave all of her property to her son, the defendant Carnes, except a small legacy which was given to her sister. In a codicil she gave $5,000 to Bleakley.

After the death of Ida, Dr. Bleakley asserted an interest in the property. Defendant Carnes, an attorney at law, disputed the claim and asserted that the codicil was invalid. As above indicated, they settled the controversy by entering into a written agreement on January 21, 1939, whereby 23 per cent of Ida Bleakley's interest in the State Loan Company would be held in trust for the benefit of Dr. Bleakley, under conditions as hereinafter shown by reference to provisions in the agreement. The agreement was prepared by Bleakley's attorneys.

The agreement provides, in substance, as follows: The purpose of the agreement is to attempt to provide a fixed monthly income of $250 for Bleakley. Ida Bleakley had expressed to Carnes a desire that Bleakley should be provided for during his life, and the parties believe that such desire will be accomplished best by the provisions of the agreement. Carroll E. Benfeldt of Portland, Oregon, shall be trustee for Bleakley, the beneficiary. If Benfeldt predeceases Bleakley, R. J. Carnes (father of James R. Carnes) shall become trustee. If R. J. Carnes predeceases Benfeldt, James R. Carnes (defendant) shall become trustee. If R. J. Carnes becomes trustee and predeceases Bleakley, James R. Carnes shall become trustee. Carnes assigns to the trustee, for the benefit of Bleakley, 23 per cent of the 90 per cent interest which Ida owned of the State Loan Company. The trustee and Carnes are authorized to form a corporation to take over the assets of the loan company, provided that, when the assets are transferred to the corporation, capital stock shall be delivered to the trustee

in an amount equal to the value of the interest which the trustee "has parted with." All profits, dividends, and other property arising from the interest of the trustee, shall be paid over and delivered to the trustee. Commencing on the first day of the month next succeeding the close of probate proceedings with respect to the estate of Ida, and continuing for the lifetime of Bleakley, the trustee shall pay, on the first day of each month, to Bleakley, from funds in the trustee's possession, the sum of $250. Profits in the hands of the trustees at any time in excess of $3,000 "plus the current installment due Bleakley" shall be paid to Carnes. If the profits and dividends fail, during any 12-month period, to yield $1,440 per annum on the "share" held by the trustee for Bleakley, the trustee is authorized and shall be required to draw upon the principal of said "interest" in order to provide for the future monthly payments to Bleakley, and if such contingency does not occur, then so long as the State Loan Company or its successor is operating, the trustee shall not be authorized or empowered to resort to the principal of the assigned interest for any purpose. The trust herein created is a spendthrift trust and Bleakley shall be without right to sell or encumber his interest in the principal or income. Carnes will pay to Bleakley $250 a month, commencing on January 20, 1939, and continuing on the 20th day of each month thereafter until probate proceedings with respect to the estate of Ida have terminated. In the event the earnings of the interest assigned by Carnes to the trustee are more, for the period intervening between the death of Ida and the termination of probate proceedings, than the amount which Carnes has paid to Bleakley, the amount of such excess shall be paid to the trustee by Carnes. If the earnings are less, all such earnings shall be paid to Carnes, and he waives any balance due him. If Carnes receives a salary from the State Loan Company or its successor, 23 per cent of such salary shall be paid by Carnes to the trustee as an additional source of revenue from which the trustee shall make the monthly payments to Bleakley. Upon the death of Bleakley the trust shall terminate and, upon a proper accounting, the trustee shall be relieved from further duties. At the time of such accounting, the trustee shall deliver all money and property in his possession as trustee to Carnes. Bleakley assigns to Carnes all of Bleakley's interest in the property and estate of Ida. Carnes agrees that the $5,000 given to Bleakley in the codicil may be paid to Bleakley from Ida's estate.

The agreement also provides that Carnes would cause probate proceedings to be instituted upon Ida's estate.

When the agreement was made, Bleakley was approximately 40 years of age, and Carnes was approximately 26 years of age.

After the agreement was made, Carnes transferred 20.7 per cent interest in the State Loan Company (i.e., 23 per cent of the 90 per cent interest of Ida in the company) to Benfeldt, as trustee. (Presumably Ida's interest in the company was distributed to Carnes from Ida's estate prior to such transfer.)

In 1940 a corporation was formed to take over the assets of the loan company, as provided in the agreement, and the assets were transferred to the corporation. The authorized capital of the corporation was $100,000, represented by 1,000 shares of the par value of $100 each. The corporation issued a certificate for 192 shares to Benfeldt, as trustee, in accordance with the agreement between Bleakley and Carnes. Carnes was the owner of the majority of the corporation stock, and was a director and president of the corporation.

Benfeldt became manager of the corporation and continued in that capacity and as trustee under the agreement until August 1950, when he was discharged as manager. He abandoned his duties as trustee. R. J. Carnes (named in the agreement as successor trustee) died a few weeks thereafter. About seven months later, N. S. Couper, the new manager of the corporation, was appointed trustee by Carnes, with the approval of Bleakley.

During the year 1939 (when the partnership was in existence) Carnes paid to the trustee (Benfeldt), and the trustee paid to Bleakley, 20.7 per cent of the earnings of the partnership. (The record does not show the total amount of such payments.)

In 1940 (after the assets of the partnership had been transferred to the corporation) Benfeldt, as trustee, paid to Bleakley $1,996.80, which amount represented $1,536.00 as dividends and $460.80 as 19.2 per cent of Carnes' salary.

In 1941 Bleakley and Carnes agreed that a small dividend would be paid by the corporation in 1941 in order to increase the earned surplus of the corporation, and that in the year 1942 a larger dividend would be paid to offset the small dividend paid in 1941. Consequently, in 1941 Benfeldt, as trustee, paid to Bleakley $1,228.80, which represented $768 as dividends and $460.80 as 19.2 per cent of Carnes' salary. In 1942 Bleakley was paid $3,129.60 (as dividends and percentage of salary). During the next three years the average yearly

amount paid to him was approximately $1,400. During each of the next four years (up to 1950) he was paid approximately $1,800. In 1950 and 1951, respectively, he was paid $1,234 and $864. It thus appears that except for the year 1942, Bleakley was not paid $3,000 a year.

Apparently the reason the dividend for 1951 ($864) was comparatively small was that Benfeldt, the manager of the corporation, had misappropriated funds. After discovery of such defalcation, the payment of dividends, and payment of salary to Carnes, were suspended. At the end of 1951 the amount of surplus was $14,403.75.

In December 1951 or January 1952 (according to Carnes' testimony), Carnes and Bleakley entered into an oral agreement whereby Carnes agreed to lend Bleakley $90 a month (or $1,080 a year) until the amounts payable to Bleakley under the 1939 agreement equalled $1,440, the minimum amount referred to in the 1939 agreement. Thereafter, commencing in January 1952 and continuing to the time of Bleakley's death (March 1956), Carnes paid (or caused to be paid) to Bleakley $90 a month. They determined the amount of $90 a month, as the amount to be paid, by deducting 25 per cent from the minimum amount of $120 a month ($1,440 a year referred to in the 1939 agreement). The reason 25 per cent was deducted was that Bleakley's "income tax bracket" was 25 per cent, and since a tax is not payable on a loan, the receipt of $90 a month, as a loan, would be equivalent to receiving $1,440 a year and deducting the tax. (The conversation which constituted the oral agreement to lend $90 a month will be referred to hereinafter.)

After the death of Bleakley, Couper, the trustee, delivered to Carnes the stock certificate for 192 shares, and those shares were transferred to Carnes on the books of the corporation. At the time of Bleakley's death the amount of surplus was $58,097.46.

Bleakley's second wife (Frances, whom he married in 1940) died in 1950. Bleakley was administrator of her estate, and the defendant Carnes was his attorney in the probate proceedings. The proceedings were closed in 1952.

As above stated, Bleakley married the plaintiff herein (Mary, his third wife) in 1954, and he died in March 1956. The defendant Carnes represented her as attorney when she filed her petition for letters of administration. Prior to the hearing on the petition another attorney was substituted as her attorney. Carnes did not file a claim against the estate

for the money he had paid to Bleakley at the rate of $90 a month. (Under the oral agreement regarding the payment of $90 a month, Carnes had agreed not to make such a claim— since he was to receive the 192 shares as remainderman.) After the time for filing claims had expired, the plaintiff, as administratrix, demanded an accounting from Carnes and from Couper, the trustee. Neither one rendered an accounting, and plaintiff commenced this action.

The court made findings which were substantially in accordance with the facts stated above. It also made findings as follows: During the period in which the partnership interest was the corpus of the trust, Bleakley received his share of the partnership profits in full. During the period in which the 192 shares of corporation stock were the corpus of the trust, Bleakley received, through the trustee, all the dividends which were declared and paid on the 192 shares. During the period last mentioned, not all the earnings of the company were declared and paid as dividends but some were retained for the benefit and the best interests of the company. During the entire period of the 1939 agreement, Bleakley received, through the trustee or directly from Carnes, all the salary-offset payments required to be paid by Carnes pursuant to the agreement. Bleakley was aware at all times of the provisions of the agreement, and he never made a request or demand on Benfeldt or Couper that the 192 shares of stock, or any part thereof, be sold to provide him with money in addition to the sums which he had received. In the early part of January 1952, Bleakley and Carnes entered into an oral agreement by the terms of which Carnes agreed to advance to Bleakley $90 a month, as a series of loans, until the amounts payable to Bleakley under the 1939 agreement equalled or exceeded the minimum of $1,440 a year. Carnes further agreed that on Bleakley's death, he would make no claim against Bleakley's estate for ''said sum'' if the shares were not sold and remained in the trust. Bleakley agreed to keep intact the corpus of the trust, consisting of the shares, and agreed not to exercise his right to have the shares sold for his benefit. The amount of $90 a month, or $1,080 a year, was substantially equal to the amount of $1,440 a year, less the income tax chargeable thereto. A confidential relationship never existed between Bleakley and Carnes. Carnes never acted as trustee under the 1939 agreement. The relationship of trustee and beneficiary never existed between Carnes and Bleakley. Following the defalcation by Benfeldt, the business affairs of the corporation were conducted in a reasonable and

prudent manner, and in the best interest of its shareholders. The accumulation of corporation earnings during the period involved in this litigation were reasonable under the circumstances and business conditions. Carnes never exerted any influence or power over Benfeldt or Couper so as to cause either of them to fail to act, or to act improperly, as trustees under the 1939 agreement and the modifications thereof.

The court concluded that the 1939 agreement is ambiguous in that it cannot be determined therefrom (1) whether the salary-offset payments (the percentage of Carnes' salary payable to Bleakley) were to be included with the dividend payments in order to determine whether Bleakley had received the minimum annual sum of $1,440, or (2) how much of the corpus of the trust might be sold in the event Bleakley received less than $1,440 in any year, i.e., whether the amount to be sold would be that which would be necessary to provide the difference between the amount which Bleakley had received and $1,440, or the difference between the amount he had received and $3,000. The proper interpretation of the agreement is that the salary-offset payments were to be included with the income payments received from the corpus of the trust in order to determine whether Bleakley had received the minimum payment of $1,440 in any year; and that in the event Bleakley received less than $1,440 in any year from those two sources, so much of the corpus of the trust might be sold to provide him with the difference between the sum he received and $3,000. The agreement was modified in 1941 by an executed oral agreement between Bleakley and Carnes by the terms of which it was agreed that the dividends in 1941 would be restricted, that in 1942 large dividends would be declared to compensate for the small dividends in 1941, and that the trustee should not sell the shares to make up any deficit in the payments to Bleakley for 1941. With the exception of the year 1943, Bleakley received all sums he was entitled to receive under the terms of the 1939 agreement as modified by the oral agreements made in 1941 and 1952. Bleakley waived his right to demand the sale of any of the corpus of the trust for the deficit in payment during 1943. The 1939 agreement was modified by an executed oral agreement made by the parties in or about January 1952, by the terms of which Carnes agreed to advance to Bleakley, as loans, $90 a month so long as the dividends and salary-offset payments did not equal or exceed $1,440 a year; and Bleakley agreed that he would not require that shares of stock be sold,

but would cause the corpus to remain intact; and Carnes agreed that if no shares of the trust corpus were sold he would not seek repayment of the loans. The trust terminated upon the death of Bleakley and, by the terms of the 1939 agreement, Couper was required to distribute the 192 shares of corporation stock to Carnes. Couper has performed all his duties as trustee in compliance with the terms of the agreement as modified. Carnes has performed fully all the agreements to be performed by him, and has complied with the terms of the 1939 agreement as modified. Bleakley received everything he was entitled to receive under the agreement as modified. Carnes is the owner of the 192 shares of stock and plaintiff has no rights or interest in said shares. Plaintiff is not entitled to any relief against Carnes.

Appellant asserts that the evidence is insufficient to support the findings that Carnes did not occupy a confidential or fiduciary relationship as to Bleakley. She argues to the effect that: the 1939 agreement between Bleakley and Carnes created a trust in favor of Bleakley; Carnes as the owner of the majority of the stock controlled the company and therefore controlled the amount of income the trust would receive and the amount of income to be paid to Bleakley; neither Benfeldt nor Couper had any independent status, and that Carnes was the "real" trustee; by reason of the location of the office of the loan company in Portland, Bleakley was dependent on Carnes for information with respect to the financial affairs of the company; by reason of the spendthrift provision of the agreement, Bleakley was dependent upon the willingness of Carnes to distribute the earnings of the company; Carnes was attorney for Bleakley as administrator of the estate of his second wife; Carnes had "promised" to be a trustee (by the provision in the agreement that he would be the successor trustee upon the happening of certain events); under such circumstances Carnes occupied a confidential and fiduciary relationship as to Bleakley.

Appellant argues further that: the purpose of the trust was to attempt to provide Bleakley with a fixed income of $250 a month, or $3,000 a year; it was contemplated that the trust would yield at least $1,440 a year; under the 1939 agreement, in the event the dividends were less than the $1,440 a year, the trustee was required to sell sufficient stock to pay $3,000 a year to Bleakley; the dividends were less than $1,440 a year in each year except 1940 and 1942; under such circumstances the trustee should have sold sufficient stock in the other years

(through 1955) to pay $3,000 a year to Bleakley; if the trustee had sold sufficient stock during those years to pay said amount, all the stock would have been sold and Bleakley would have received the proceeds; neither of the trustees (Benfeldt and Couper), nor Carnes, carried out the terms of the agreement, and the result was that Bleakley did not receive the amounts he should have received; under equitable principles, Carnes has no interest in the corpus of the trust (192 shares of stock).

The evidence shows that the bona fide controversy which existed between Bleakley and Carnes in 1939, regarding Ida's ownership of property and the validity of the codicil, was settled by making the 1939 agreement which was prepared by Bleakley's attorneys. Carnes, an attorney, represented himself. The circumstances surrounding the making of that agreement do not indicate that a confidential or fiduciary relationship existed between them. The fact that Carnes was designated in the agreement as a prospective successor trustee did not constitute a basis for concluding that such a relationship existed. It does appear that such relationship existed while Carnes, an attorney, represented Bleakley who was administrator of his second wife's estate—that is during the time from 1950 to some time in 1952 (the date of closing the proceedings is not shown by the record). Since the court found that the oral agreement regarding a modification of the 1939 agreement was made in the early part of January 1952, and since the probate proceedings extended into 1952, it would seem the relationship of attorney and client was in existence when the oral agreement was made. The relationship of attorney and client is a confidential and fiduciary relationship. (*Bradner* v. *Vasquez,* 43 Cal.2d 147, 151 [272 P.2d 11].) The court erred in finding that a confidential or fiduciary relationship did not at any time exist between Carnes and Bleakley.

If such a relationship existed between Carnes and Bleakley when the oral agreement was made, and if Carnes obtained an advantage therefrom, a presumption would arise that the transaction was entered into by Bleakley without sufficient consideration and under undue influence. (See *Bradner* v. *Vasquez, supra,* pp. 151-152.) In such event the burden would be on Carnes to overcome that presumption. (See *Brydonjack* v. *Rieck,* 5 Cal.App.2d 219, 223 [42 P.2d 446].)

Whether such relationship existed at the time of making the oral agreement and whether Carnes gained an unfair advantage therefrom were questions of fact for the determina-

tion of the trial judge. (See *Roeder* v. *Roeder*, 118 Cal.App. 2d 572 [258 P.2d 581].) Even if such relationship existed when the oral agreement was made, the question of fact as to whether Carnes gained an unfair advantage would remain for determination.

As above indicated, the court found that the 1939 agreement was modified by an executed oral agreement made in or about January 1952 whereby under certain stated conditions $90 a month would be advanced by Carnes. Another finding was that Bleakley received all sums he was entitled to receive under the agreement as modified. ■ A written contract may be altered by an executed oral agreement. (*Chohon* v. *Kersey Kinsey Co.*, 173 Cal.App.2d 548, 552 [343 P.2d 614] ; Civ. Code, § 1698.) ■ "Whether a written contract has been modified by an executed oral agreement is a question of fact." (*MacIsaac & Menke Co.* v. *Cardox Corp.*, 193 Cal.App.2d 661, 670 [14 Cal.Rptr. 523].)

■ The conversation regarding such modification occurred after the discovery of the defalcation by Benfeldt, and it was in substance as follows: Carnes told Bleakley that it might be quite a period of time before dividends would be paid. He asked Bleakley whether he wanted to sell his stock. Bleakley replied that he did not want to sell it under any circumstances, that he preferred to keep the stock intact as protection when he would not be able to practice dentistry. Bleakley "indicated that he would like something like the minimum amount to come in." Carnes offered to advance $90 a month to him from Carnes' personal funds as a loan for an indefinite period, and agreed that Bleakley would not be expected to repay the money until he was receiving sufficient dividends. Carnes said that Bleakley would not have to pay income tax on the loans. Bleakley said that his tax bracket was 25 per cent. The $90 a month was 25 per cent less than the "minimum amount of $120 a month, or $1,440 a year." Bleakley asked what would happen to the loan if he died. Carnes replied that if dividends were not declared, the surplus would be greater, and "so since the stock goes to me, as remainderman, I will have more, and therefore I will not make a claim against your estate for the money which I advance to you." As above stated, Carnes paid the $90 to Bleakley each month thereafter until the death of Bleakley. It is obvious of course that, except for the oral agreement, Bleakley was not entitled to $90 a month as a loan or payment from Carnes personally. The effect of the oral agreement was to

assure Bleakley that he would have for his use the equivalent of the minimum amount of $1,440 a year regardless of the earnings of the corporation or the dividends paid. There was sufficient consideration for the oral agreement. ██ After the oral agreement was made Bleakley accepted the $90 each month and made no further claim for payment under the 1939 agreement. Carnes made no claim against the estate of Bleakley for repayment. The administratrix of his estate, the plaintiff herein, made no request of Carnes or the trustee for an accounting until after the time for filing creditors' claims had expired. The evidence was sufficient to support the finding that the 1939 agreement was modified by an executed oral agreement. The evidence was sufficient to support the finding that Bleakley received all he was entitled to receive under the agreement as modified. Such findings are to the effect that Carnes did not exercise undue influence in the transactions nor gain an unfair advantage over Bleakley.

In view of the above conclusions, it is not necessary to determine other contentions on appeal.

The judgment as to defendant Carnes is affirmed.

Fourt, J., and Lillie, J., concurred.