[Civ. No. 23933.   First Dist., Div. Two.   Apr. 25, 1967.]

FRED S. MACOMBER, Plaintiff and Respondent, v. STATE OF CALIFORNIA, Defendant and Appellant.

392

Thomas C. Lynch, Attorney General, and Robert E. Murphy, Deputy Attorney General, for Defendant and Appellant.

Robert O. Wilhelm for Plaintiff and Respondent.

TAYLOR, J.—This is an appeal by the State of California from an adverse judgment rendered on a jury verdict in favor of plaintiff general contractor's claim for additional work done in the remodeling of Chico State College (hereafter College). The State argues that there is no evidence to support

the jury's implied finding that the state architect committed gross error in rejecting plaintiff's claim; that the rule of substantial evidence is not applicable to a review of administrative proceedings; that plaintiff did not, in good faith, exhaust his administrative remedies; that the trial court erred in permitting plaintiff to amend the complaint; and that, in any case, plaintiff is not entitled to interest prior to judgment.

Viewing the record most favorably to the judgment, as we must, the following facts appear: Plaintiff, Fred S. Macomber, a general contractor, was the successful bidder on a $101,250 State contract to remodel the administration building of the College. The contract, dated May 22, 1961, contained the usual general conditions, the pertinent portions of which are set forth below.[1] The portion of the work here in issue is the manufacture and installation of a two-story spiral

[1]Paragraph 29: "Should any discrepancies or apparent error be found in the plans or specifications, or should any work of others affect this work, the Contractor shall notify the State Architect at once. All such discrepancies or errors shall be clarified within a reasonable time by the State Architect, whose decision shall be final. Should the Contractor proceed with the work affected without instruction from the State Architect, he shall be responsible for any damage, defect or added cost resulting therefrom."

Paragraph 42: "Any change or deviation from the contract plans and specifications made without authority in writing from the State Architect will be the responsibility of the Contractor. Except where otherwise expressly provided in these specifications, no such change shall be made nor adjustment in compensation recognized unless the Contractor receives an executed change order prior to making the change."

Paragraph 51: "However, if the Contractor within said period of thirty (30) days does file claim for additional sums in excess of the State's proposed final payment, as money earned under or arising out of the contract, the State Architect shall consider and investigate such claim. If he finds that no additional sums are due over the amount of the State's proposed final payment, then the semifinal payment estimate and the State's proposed final payment made thereunder shall become final and shall thereupon become conclusive and binding against both parties on all questions relating to the performance of the contract and the amount of work done thereunder and compensation therefor, except in the case of gross error. If the State Architect finds that additional sums are due under the contract, he shall issue his final written payment estimate in such amount and the State will make a final payment of the additional amount so found to be due. Such final payment estimate and final payment shall thereupon become conclusive and binding against both parties to the contract on all questions relating to the performance of the contract and the amount of work done thereunder and compensation therefor, *except in the case of gross error.* Payment on the final estimate will be made within sixty (60) days from the date of acceptance of the contract by the Director of Public Works, provided all pertinent matters have been satisfactorily resolved. All prior estimates and payments shall be subject to correction in the final estimate and payment." (Italics supplied.)

staircase in the college administration building. The structural steel subcontractor for the staircase was Robert R. LaMarr (hereafter LaMarr).

The State's plans and specifications (hereafter plans) for the staircase called for a circular spiral staircase with a radius of 7.2 feet to be specially manufactured to fit into the existing two-story rotunda of the administration building. The rotunda was wider on the first floor than on the second. The travertine treads of the staircase were to be suspended from a steel beam, known as a spiral box stringer (hereafter stringer).

The staircase was not supported by the building but was to be attached to the first floor by a pier and concrete column underneath the floor. The top of the staircase was to be bolted to the existing concrete beam of the second floor of the building. This concrete beam was not exposed but hidden behind a frieze of plaster. The plaster was "furred," meaning that it covered up the structural beams and filled in void space so as to suggest a rounded corner instead of the straight one produced by the beams. The plans indicated that the furred plaster on the second floor was $7/8$ of an inch thick. Mr. Cameron, the state's job superintendent, would not permit LaMarr to make holes in the plaster to determine its actual thickness, as the State did not want the walls to be left open during the several months of construction.

LaMarr's shop drawings for the stringer were approved by the State before the stringer was manufactured. After the stringer was manufactured in LaMarr's shop in Redwood City, it was approved there by State Inspector Cook. The stringer, in two sections, arrived on the job site on October 11. In order to get the second floor section inside the building, it had to be cut in half.

When the installation began on October 13, immediate difficulties were encountered and Mr. Muller, a structural engineer for the State, was summoned from Sacramento. Plaintiff and Mr. Cameron were also present. The stringer was too short because the plaster over the concrete beam on the second floor was $3\frac{3}{4}$ inches thick instead of the $7/8$ of an inch shown on the plans. Some of the treads were 5 inches underneath the second floor.

In addition, the entry for October 17 in the daily log book kept by Cameron read: "It was determined that the difficulty in fitting spiral stair thru the opening in 2d floor at Rotunda

was not due to discrepancies in fabrication of steel stringer but that the opening is smaller than assumed to be.''

Accordingly, it was determined that by shifting the anchorage of the staircase on the first floor, the entire staircase could be moved enough to clear the handrail where it passed by the second floor facia. Mr. Muller wrote up the details of the subsequently issued Change Order No. 10 authorizing the change of position of the first floor anchorage for an additional $559.46.

Mr. Brogunier, a structural engineer, made an engineering investigation of the staircase after installation at the request of LaMarr. He studied the shop drawings and plans, took precise measurements of the staircase and building, and ascertained that if the staircase had been constructed in accordance with the plans or shop drawings, it would not have fit the building. Mr. Brogunier also found that there was a variance of one inch between the center point of the rotunda on the first floor and the center point on the second floor. The supports for the staircase were based on the center line on the first floor. The differences between the two center points would cause problems if the stairway were constructed in accordance with the plans, which indicated the same center points for both floors. These discrepancies between the plans and actual field conditions could not be ascertained from the plans.

After the change of the anchorage was accomplished, a number of additional problems appeared. The spiral of the staircase became elliptical instead of circular and the staircase was thrown off the center line so that the second floor landing had to be changed. After the shift, the staircase did not rest properly on the first floor support columns. Mr. Cameron indicated that the staircase, as shifted, was not acceptable, and that further adjustments were required.

The additional work required was not covered by Change Order No. 10, but done by LaMarr pursuant to Cameron's oral instructions. Cameron, plaintiff, LaMarr, Mr. Dwyer, the designer of the staircase, as well as a representative of the College, discussed various solutions to the problems presented. On December 13, Mr. Dwyer again visited the site and was informed that LaMarr was considering the submission of a claim for the additional work required.

Since the first floor columns could not be moved, it was determined, with Mr. Cameron's approval, that the stringer could be welded and spliced. As a result of the splicing, some

parts of the spiral were flattened and the original risers no longer fit. New ones had to be made to keep the distance between the risers required by the plans. The welds then had to be made smooth to provide the neat appearance required by Mr. Dwyer.

Finally, the staircase was accepted by the State. Plaintiff, in accordance with the general conditions, timely filed his claim for $13,673.98. The claim was rejected by the state architect, then reviewed and rejected by the State Board of Control, and this action ensued.

The State does not question the general rule that a contractor who, acting reasonably, is misled by incorrect plans and specifications and who, as a result, submits a bid which is lower than he would otherwise have made, may recover in a contract action for extra work necessitated because of the incorrect plans and specifications (*Coleman Engineering Co., Inc.* v. *North American Aviation, Inc.*, 65 Cal.2d 396, 404 [55 Cal.Rptr. 1, 420 P.2d 713] ; *Souza & McCue Constr. Co.* v. *Superior Court*, 57 Cal.2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338]). Also, the State concedes that its plans and specifications were incorrect. The chief argument on appeal is that under Paragraph 51 of the general conditions (set forth in footnote 1 above), the decision of the architect in rejecting plaintiff's claim is conclusive in the absence of fraud or gross error (*American-Hawaiian Engineering etc. Co.* v. *Butler*, 165 Cal. 497, 504 [133 P. 280, Ann. Cas. 1916C 44] ; *Hagginwood Sanitary Dist.* v. *Downer Corp.*, 179 Cal.App.2d 756 [3 Cal. Rptr. 873]) and that the evidence here is not sufficient to indicate the existence of such error.

The gross error concept is not clearly defined but is generally equated with fraud, constructive fraud, bad faith or a failure to exercise honest judgment (*A. Teichert & Son, Inc.* v. *State of California*, 238 Cal.App.2d 736, 754 [48 Cal.Rptr. 225] ; *American-Hawaiian Engineering etc. Co.* v. *Butler, supra*; *C. J. Wood, Inc.* v. *Sequoia Union High School Dist.*, 199 Cal.App.2d 433 [18 Cal.Rptr. 647] ; *Connell* v. *Higgins*, 170 Cal. 541 [150 P. 769] ; *California Sugar etc. Agency* v. *Penoyar*, 167 Cal. 274 [139 P. 671]). Fraud in this connection has a broader connotation than is ordinarily implied. In addition to its ordinary significance, in construction contracts it includes arbitrary action and gross mistake (13 Am.Jur.2d, Building and Construction Contracts, § 34; Restatement of the Law, Contracts, § 303, subd. (f).) The underlying rationale of this concept of fraud is that in determinations under

this type of contract, the high point in the architect's practice of his profession lies in those instances when, in order to do justice to the contractor, he has to oppose the desire of his employer. ■ He occupies a position of trust and confidence. When he acts under a contract as the official interpreter of its conditions and the judge of its performance, he should favor neither side, but exercise impartial judgment (*Terminal Constr. Corp.* v. *Bergen County, etc. Authority* (1955) 18 N.J. 294, 317 [113 A.2d 787, 799]). ■ ■

■ ■ We turn then to the question of whether there was any substantial[2] evidence to support the jury's implied finding that the architect was guilty of gross error in rejecting plaintiff's claim.

■ Our summary of the facts demonstrates that there was ample evidence to support the verdict. The existence of the errors in the plans concerning the thickness of the plaster and center points was uncontroverted. The entries in Mr. Cameron's log book indicate that the State was aware of the errors and had determined that they were not due to the fabrication of the staircase. The state's witnesses agreed with plaintiff's concerning the difficulties of making adjustments in a circular staircase of the kind here in issue. The issuance of Change Order No. 10 and the fact that it did not cover the many subsequent adjustments required by the State is likewise not disputed. The record indicates that the conference of all concerned to discuss the adjustments was the very procedure recommended by the state's witness. The chief conflict in the evidence was the extent of the inspection made by State Inspector Cook at LaMarr's shop. We think there was sufficient evidence from which the jury could conclude that after instructing LaMarr to shift the base of the staircase, the additional work was both required by the State and properly performed by plaintiff (*C. F. Bolster Co.* v. *J. C. Boespflug etc. Co.*, 167 Cal.App.2d 143, 154 [334 P.2d 247]).

With complete knowledge of the serious errors in the plans and the many subsequent adjustments required of plaintiff, ﹐

---

[2]We need not dignify with extended discussion the State's unique contention made for the first time in its closing brief on appeal (and wholly unsupported by any authorities or the record herein) that the normal substantial evidence rule does not apply and that we should apply the more limited standards usually applied to writ proceedings pursuant to section 1094.5 of the Code of Civil Procedure (3 Witkin, Cal. Procedure (1954), Extraordinary Writs, §§ 16-18, pp. 2484-2490). We note that while the rule exists in the federal courts, it is based on statute (*United States* v. *Carlo Bianchi & Co.*, 373 U.S. 709 [10 L.Ed.2d 652, 83 S.Ct. 1409]).

the state architect rejected plaintiff's claim. We think that the jury could reasonably infer from the evidence that this rejection, under the circumstances, at least constituted arbitrary action and failure to exercise honest judgment or, at most, bad faith (*Atchison etc. Ry. Co.* v. *West,* 176 Cal. 148, 152 [167 P. 868] ; *Terminal Constr. Corp.* v. *Bergen County etc. Authority, supra*).

The State next argues that plaintiff was not entitled to judgment because plaintiff's verified first amended complaint contained factual allegations and admissions in direct conflict with the allegations and admissions in the original complaint. The record indicates that the original complaint alleged that the plans were incorrect and that the stairway could not be constructed in strict conformity with the plans and specifications, while the first amended complaint alleged that the stairway had been fabricated in accordance with the plans and specifications. The contention is clearly without merit under the circumstances here presented.

This is not a situation where the contradiction of the original allegation carries with it the onus of untruthfulness. The error in the plans is not disputed, nor is the fact that a staircase constructed in conformity therewith would not fit into the rotunda. The facts showed that precisely because the staircase was manufactured properly and in accordance with the plans, which were in error, the problems arose on its installation and the staircase had to be modified to fit the actual conditions.

Rules of pleading are conveniences to promote justice and not to impede or warp it. We do not question the rule that all allegations of fact in a verified complaint, which are subsequently omitted or contradicted, are still binding on the complainant. The rule is valid and useful, but it does not exist in a vacuum and cannot be mechanically applied. It is a good rule to defeat abuses of the privilege to amend and to discourage sham and untruthful pleadings. It is not a rule, however, which is intended to prevent honest complainants from correcting erroneous allegations of generic terms which may have legal implications but which are also loosely used by laymen or to prevent the correction of ambiguous statements of fact (*Avalon Painting Co.* v. *Alert Lbr. Co.,* 234 Cal.App.2d 178, 185 [44 Cal.Rptr. 90] ).

It was not an abuse of discretion by the court to permit plaintiff, at the close of trial, to further amend his first amended complaint to conform to proof by the addition of the

words "with gross error" as shown below[3] (Code Civ. Proc., § 473; *Feykert* v. *Hardy*, 213 Cal.App.2d 67 [28 Cal.Rptr 510]).

We need not discuss in detail the State's contention that plaintiff failed to file a sufficiently detailed claim and thus to properly exhaust his administrative remedies prior to this action. *Bohn* v. *Watson*, 130 Cal.App.2d 24, 36-38 [278 P.2d 454], cited by the State, dealt with the review of an administrative proceeding pursuant to section 1094.5 of the Code of Civil Procedure, and is not pertinent here. The State has not cited any authority indicating that the claim submitted did not meet the requirements of Paragraph 51 of the general conditions. Plaintiff's claim informed the state architect of the error in the plans and of the extra work performed. In view of State Job Superintendent Cameron's knowledge and detailed records concerning the work done to make the staircase acceptable, the question of the effect of plaintiff's alleged failure to respond to the state architect's request for more detailed information was appropriately left to the jury. The court properly overruled the demurrer to the amended complaint predicated on this point.

Finally, the State argues that the court erred in awarding interest on the judgment from the date of filing of the original complaint. The pertinent portion of section 3287 of the Civil Code provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt." The allowance of interest as damages by way of compensation for wrongful detention of money due to plaintiff only occurs when the sum is liquidated or ascertainable within the meaning of section 3287. Under the statute, interest cannot be awarded prior to judgment when the amount of damages cannot be ascertained except on conflicting evidence (*Coughlin* v. *Blair*, 41 Cal.2d 587, 604 [262 P.2d 305]). The rationale of such rule is that where a defendant does not know what amount he owes and cannot ascertain it except by

---

[3] "In accordance with the provisions of Section 51 of the General Conditions, within thirty days of the issuance of the proposed final payment by the DIVISION OF ARCHITECTURE, plaintiff filed his claim for additional compensation, as hereinabove alleged, in the sum of $13,673.98, which claim was thereafter denied by the DIVISION OF ARCHITECTURE. [written] *with gross error.*"

accord or judicial process, he cannot be in default for not paying it (*Chase* v. *National Indemnity Co.*, 129 Cal.App.2d 853, 865 [278 P.2d 68]).

However, when the exact sum of the indebtedness is known or can be ascertained readily, the reason for the denial of interest does not exist (*Conderback, Inc.* v. *Standard Oil Co.*, 239 Cal.App.2d 664, 690 [48 Cal.Rptr. 901]). If the amount owing can be calculated and determined from statements rendered by plaintiff to the defendant and the statements are found to be true and correct, it is a matter of mere calculation within the statute (*Coleman Engineering Co., Inc.* v. *North American Aviation, Inc., supra*). Cost-plus construction contracts are within that rule (*Anselmo* v. *Sebastiani*, 219 Cal. 292 [26 P.2d 1]; *Maurice L. Bein, Inc.* v. *Housing Authority*, 157 Cal.App.2d 670, 686-688 [321 P.2d 753]), as are other contracts where the amount due is made certain by the agreement of the parties (*Pilch* v. *Milikin*, 200 Cal.App.2d 212 [19 Cal.Rptr. 334]).

Here, the claim sued on was unliquidated and until the trial was had, the amount claimed was but plaintiff's estimate (*Steere* v. *Formilli*, 38 Cal.App. 194, 196 [175 P. 806]). Plaintiff was entitled to no more than the reasonable value of the extra work done (*Benson Elec. Co.* v. *Hale Bros. Associates, Inc.*, 246 Cal.App.2d 686, 697 [55 Cal.Rptr. 73]) which could only be ascertained by the trial court after a consideration of the conflicting evidence (*Broderick* v. *Torresan*, 88 Cal.App.2d 18, 22 [198 P.2d 75]; *MacIsaac & Menke Co.* v. *Cardox Corp.*, 193 Cal.App.2d 661, 673-674 [14 Cal. Rptr. 523]). The record indicates that although plaintiff supplied his total cost, the details of the cost breakdown involved could only be determined after cross-examination.

We conclude that interest should be allowed only from the date of judgment (*Seaboard Surety Co.* v. *United States* (9 Cir. 1966) 355 F.2d 139, 146). Accordingly, the trial court is directed to modify the judgment by deducting the amount of $3,873.42 interest awarded for the period of time before the date of the judgment. As so modified, the judgment in favor of plaintiff is affirmed. Respondent to recover costs on appeal.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied May 25, 1967, and appellant's petition for a hearing by the Supreme Court was denied June 21, 1967.