Filed 2/23/23  Sadeghi v. Chen CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| IMAN SADEGHI, | B312596 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC709376) |
| v. | |
| YEN-CHUN CHEN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Lia R. Martin, Judge.  Affirmed in part and reversed in part.

Fernald Law Group, Adam P. Zaffos and Brandon C. Fernald for Plaintiff and Appellant.

Law Offices of Benjamin Davidson, Benjamin Davidson; Bartko Zankel Bunzel & Miller, Charles Griffith Towle, and Ronnie Shou for Defendants and Respondents.

# INTRODUCTION

Upon appellant Dr. Iman Sadeghi's (Sadeghi) arrival at his place of employment, he was given notice that his employment was terminated and it would be his last day of work. Despite requests by his supervisor to immediately turn in his work laptop, Sadeghi did not do so and stated that he would return it by the end of the day; he attempted to leave the office and office building with the work laptop in his backpack. Instructed by the supervisor to follow Sadeghi and retrieve the work laptop, three of Sadeghi's coworkers surrounded him, restrained him on the ground, and physically accosted him while retrieving the laptop from his backpack. Sadeghi sued his coworkers, alleging battery, intentional infliction of emotional distress, and invasion of privacy.

Based primarily on the sham pleading doctrine, the trial court sustained a demurrer to Sadeghi's claims without leave to amend and dismissed this action as to the coworkers. Sadeghi appeals from the judgment of dismissal and underlying order sustaining the demurrer.

We reverse the judgment of dismissal. We conclude the sham pleading doctrine does not apply. We also conclude Sadeghi's claims are not preempted by the workers' compensation exclusivity rule. We find Sadeghi sufficiently pleaded his causes of action for battery and intentional infliction of emotional distress; we reverse the order sustaining the demurrer in that regard. We affirm in all other respects.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *Events Leading to Filing of Civil Complaint*

Sadeghi is an award-winning computer graphics engineer, who developed a novel digital hair rendering framework for the production of the movie *Tangled* (Walt Disney Pictures (2010)) while working at Walt Disney Animation Studios.[1]  Sadeghi joined Google as a software engineer in 2011 and remained employed there for years.

Dr. Hao Li (Li) is co-founder and chief executive officer of Pinscreen, Inc. (Pinscreen), a software startup that specializes in the generation of animated 3D face models (i.e., avatars) by use of a person's photograph.  In 2016, Li solicited Sadeghi to leave Google and join Pinscreen's leadership.  On January 23, 2017, Sadeghi accepted an offer to join Pinscreen as its vice president of engineering.  Two days later, Sadeghi gave his resignation letter to Google.

According to Sadeghi's original complaint, his employment at Pinscreen was short-lived and lasted six months—from February 2, 2017 to August 7, 2017.  On August 7, 2017, within an hour of Sadeghi's arrival at Pinscreen's office, Li and Pinscreen's chief financial officer Yen-Chun Chen (Chen) held a meeting with Sadeghi and handed him a termination letter from Pinscreen.  Sadeghi "requested to meet Pinscreen's full board of directors *before the termination decision was final, to which Li responded, 'sure.'*"  (Italics added.)  "Before Sadeghi had a chance to read the termination letter, Li suddenly lost his temper, slammed the conference room door open and yelled at Sadeghi to

---

[1]    Sadeghi is credited as the co-inventor of the framework in the patent filed by Disney.

3

leave the room, in front of Sadeghi's coworkers, in a humiliating and embarrassing manner."

"Concerned by Li's aggressive behavior, Sadeghi decided to leave Pinscreen's office." Li, however, "physically blocked the door of the office" and "demanded Sadeghi's work laptop" which was inside the backpack Sadeghi was wearing. Sadeghi told Li he "intended to return the laptop before the end of business day" after he "preserved his personal data" from the work laptop. Sadeghi then left Pinscreen's office and headed toward the building elevators. Li "ordered some of Pinscreen's employees to follow Sadeghi."

Li and three Pinscreen employees entered the elevator with Sadeghi. After exiting the elevator, Sadeghi "attempted to leave the building through the lobby" but the three Pinscreen employees "under Li's commands," surrounded Sadeghi, "grabbed" him and the backpack he was wearing, "violently restrained him, forcibly opened his backpack and took possession of Sadeghi's work laptop." Sadeghi "believe[d] that without Li's orders, the other employees would not have participated in committing the crime." As a result, Sadeghi suffered injuries to his eye and his previously dislocated shoulder, requiring medical attention and physical therapy. He also suffered severe mental and emotional distress.

On June 11, 2018, Sadeghi filed a 160-page civil complaint against Pinscreen and Li, alleging 17 causes of action. The complaint alleged the information recited above. We note, however, that elsewhere in the original complaint, Sadeghi alleged: "In retaliation for [his] . . . whistleblowing regarding Li's . . . unlawful practices, Pinscreen illegally terminated Sadeghi, on August 7, 2017, within Sadeghi's first working hour."

4

Sadeghi attached as an exhibit to the complaint a copy of his employment contract and confidential information agreement attachment (employment contract) with Pinscreen, signed January 23, 2017. The employment contract contains a section entitled "Company Property; Returning Company Documents" with the following terms: Sadeghi agreed and acknowledged he has "*no expectation of privacy* with respect to the Company's telecommunications, networking or information processing systems . . . and that [his] activity and any files or messages on or using any of those systems may be monitored or reviewed at any time without notice." (Italics added.) Sadeghi agreed that "any property situated on the Company's premises and owned by the Company . . . is subject to inspection by Company personnel at any time with or without notice." The contract additionally specified that "at the time of termination of the [work] relationship, [Sadeghi] will deliver to the Company (and will not keep in [his] possession . . .) any and all devices, records, data, . . . equipment, other documents or property . . . belonging to the Company."

B.      *Sadeghi's First Amended Complaint*

A few months later, on October 5, 2018, Sadeghi filed a 274-page first amended complaint (FAC). In addition to Pinscreen and Li, Sadeghi added as named defendants the three Pinscreen employees—Chen, Liwen Hu (Hu), and Han-Wei Kung (Kung)—who allegedly assaulted him. We collectively refer to Chen, Hu, and Kung as respondents. The FAC contained 15 causes of action total, only three of which were pleaded against respondents, namely, (1) battery, (2) intentional infliction of emotional distress (IIED), and (3) invasion of privacy.

5

Overall, the FAC alleged the same facts included in the original complaint.  It repeated the allegation that upon being provided the termination letter from Li and Chen, Sadeghi requested to meet with Pinscreen's board of directors *before the termination decision was final, to which Li agreed.*  Elsewhere in the FAC, however, Sadeghi also alleged he was "illegally terminated . . . within [his] first working hour" on August 7, 2017.  The FAC included a copy of the termination letter, which stated: Sadeghi's "last day of employment with Pinscreen, Inc., is August 7, 2017" and proposed a severance package in exchange for a general release by Sadeghi.  The letter also "remind[ed]" Sadeghi of his "continuing obligation to uphold the provisions of the [employment contract]."

The FAC also reiterated the allegations that Li demanded that Sadeghi return the work laptop during the meeting and Sadeghi's intention to return the laptop "before the end of business day . . . after he preserved his personal data."  It repeated that respondents surrounded and restrained Sadeghi, opened his backpack, and took possession of the work laptop "under Li's commands."  It also repeated that the altercation occurred inside the building lobby.  The altercation was captured on the security cameras of the building where Pinscreen's office is located.

C.    *Demurrer to the FAC*

Pinscreen and Li filed a demurrer and a motion to strike portions of Sadeghi's FAC, joined by respondents.  They argued Sadeghi's battery and IIED claims are barred because it is subject to the workers' compensation exclusive remedy rule.  They further argued the battery claim is "fatally deficient" as it did not allege respondents "intended to harm or offend" Sadeghi.

6

They also argued Sadeghi's invasion of privacy claim fails because he had no expectation of privacy on a work-issued computer and referred to terms in the employment contract that states as such.

On April 11, 2019, the trial court held the hearing on the demurrer and motion to strike portions of the FAC. The trial court ruled: The FAC "contains 439 paragraphs of allegations, in 74 pages, plus approximately 200 pages of exhibits. It includes emails, skypes, diagrams, pictures, policies, conversations, and day-to-day actions of parties and non-parties." The court struck the FAC "as not drawn in conformity with the laws of the state and rules of court" and for containing "irrelevant and improper material" (per Code Civ. Proc., §§ 425.10, subd. (a)(1) & 436, subds. (a), (b)). The court provided Sadeghi a 20-day window to file an amended complaint in conformity with Code of Civil Procedure section 425.10.

D.    *Sadeghi's Second Amended Complaint*

On May 1, 2019, Sadeghi filed a second amended complaint (SAC) which was substantially shorter in length—35 pages. The SAC alleged 15 causes of action, three of which were against respondents: (1) battery; (2) IIED; and (3) invasion of privacy.

The SAC alleged, in relevant part:

On August 7, 2017, "Pinscreen terminated Sadeghi within his first working hour."

*Battery*: Respondents committed battery on Sadeghi via "intentional, non-consensual, offensive, and harmful physical contact" in that they "intentionally touched and grabbed Sadeghi and his backpack," "forcefully restrained him, physically attacked him, and violently shoved him to the ground." The battery "did not fall within the reasonably anticipated conditions of Sadeghi's

7

role as the Vice President of Engineering at Pinscreen" and "was committed *outside of Pinscreen's premises and outside the course and scope—and after—Sadeghi's employment*." (Italics added.) Respondents "followed Li's orders" and "were acting within the course and scope of their employment" when they "physically attacked [Sadeghi] *outside of Pinscreen's premises* and *after [his] termination*." (Italics added.) As a "direct, foreseeable, and proximate result of [respondents'] battery," Sadeghi was harmed and suffered injuries to his left eye and right shoulder, requiring medical attention and physical therapy. He also sought psychotherapy and suffered from posttraumatic stress disorder (PTSD).

*Invasion of Privacy*: Sadeghi had a "reasonable expectation of privacy in his personal backpack." Sadeghi told Li he "intended to return the laptop before the end of business day, on August 7, 2017, . . . after he preserved his personal data" from the laptop. Pinscreen "had no policy prohibiting storing personal data on one's computer, and no such policy was ever communicated to Sadeghi." Respondents "followed Li's orders" and "were acting within the course and scope of their employment" when they "forcefully intruded into Sadeghi's personal belongings and violated Sadeghi's right to privacy in a manner that is highly offensive to a reasonable person." Respondents "intentionally intruded into Sadeghi's backpack . . . and took his work laptop by force." The invasion of privacy "did not fall within the reasonably anticipated conditions of Sadeghi's role as the Vice President of Engineering at Pinscreen" and was committed "*outside Pinscreen's premises and outside the course and scope—and after—Sadeghi's employment*." (Italics added.) As a result of respondents invading Sadeghi's privacy, Sadeghi

suffered PTSD and severe mental and emotional distress, and sought psychotherapy.

*IIED*: Respondents' "extreme and outrageous actions caused Sadeghi to suffer severe mental and emotional distress due to . . . being brutally battered, forcefully invaded, and physically injured." Respondents' conduct was outrageous because they "acted intentionally and unreasonably with the recognition that their actions are likely to cause Sadeghi mental and emotional distress." Sadeghi was diagnosed with PTSD as a result of the battery and invasion of his privacy. Sadeghi's PTSD and physical injuries to his right shoulder "are of such substantial and enduring quality that no reasonable person in civilized society should be expected to endure them." Sadeghi sought psychotherapy as a result.

The SAC also alleged: Li "refused to produce the security camera footage of the incident during the discovery" that was "later obtained from Pinscreen's building security." The SAC included a link to the security camera footage.[2]

E.  *Demurrer to the SAC*

On June 5, 2019, respondents and Li jointly filed a demurrer to the SAC pursuant to Code of Civil Procedure section 430.10, subdivisions (e) and (f). They argued Sadeghi failed to allege with particularity sufficient facts in support of his causes of action and that his claims were barred or preempted by the

---

[2]  Pinscreen, Inc. office building security camera footage attached to the second amended complaint: <http://sadeghi.com/Pinscreens-Assault-and-Battery-on-Sadeghi.mp4> [as of February 23, 2023], archived at <https://perma.cc/B438-RJAP>.

exclusive remedy provisions of workers' compensation law. They argued Sadeghi's "self-serving allegations" in the SAC "to situate the battery off-premises and post-termination contradict his previous verified allegations." They contended the SAC and prior iterations of the complaint admit that the alleged battery "was *provoked* by Sadeghi's decision to stow his work computer in his backpack," his "refus[al] to relinquish the computer upon request, and attempt to leave the premises." They also argued Sadeghi had "no cognizable expectation of privacy" in the work laptop and that returning the laptop (or any property belonging to Pinscreen) upon Sadeghi's termination from employment was specified in the employment contract he had signed.

On November 7, 2019, Sadeghi filed his opposition to respondents' demurrer.

F.    *Hearing and Ruling*

On November 21, 2019, the trial court held a hearing on the demurrer to the SAC. We were not provided a reporter's transcript of this hearing. We discern from the pleadings included in the record before us that after argument the trial court sustained the demurrer to the SAC's causes of action for battery, IIED, and invasion of privacy without leave to amend.

The court ruled: "The original complaint alleges the retrieval [of the work laptop] occurred after Li agreed to having the full board weigh in on the adverse action, and on the premises. In the [FAC] he alleged that this occurred in the building during his termination. The [SAC] alleged that it occurred off the premises after he was terminated." The court cited to the "sham pleading doctrine" and reasoned that allegations in an original pleading that rendered it vulnerable to demurrer or other attack cannot simply be omitted without

10

explanation. The court referred to the fact that respondents' demurrer to the FAC argued that Sadeghi's claims were barred under the exclusivity of workers' compensation. The court held Sadeghi's "allegations cannot be changed as to time and location [in the SAC] to avoid Workers Compensation, without explanation."

G.    *Dismissal*

On February 1, 2021, respondents filed a motion for entry of judgment of dismissal following the court's sustaining the demurrer to the SAC without leave to amend. They argued dismissal is proper because there are no remaining causes of action against respondents.[3] They further argued dismissal should be entered with prejudice.

On February 25, 2021, Sadeghi filed his opposition to the motion for entry of dismissal. He argued entry of dismissal is "discretionary" and requested the court "exercise its discretion and defer entering judgment [of dismissal] until the conclusion of this litigation" such that "any appeal that might be filed can address the totality of the issues and avoid piecemeal resolution."

The trial court held a hearing on March 10, 2021. We were not provided a reporter's transcript of this hearing. The record provides the trial court granted the motion and dismissed respondents with prejudice, pursuant to Code of Civil Procedure section 581, subdivision (f)(1). It found "not persuasive"

---

[3]    Meanwhile, Sadeghi filed a third amended complaint (TAC) against Pinscreen and Li on December 6, 2019; respondents were not named as defendants in the TAC. Issues pertaining to Sadeghi's TAC are currently on appeal before us in appeal case No. B316405 *Sadeghi v. Pinscreen* (app. pending).

Sadeghi's argument to delay the judgment of dismissal until the entire case is concluded.

On March 12, 2021, notice of entry of the judgment of dismissal with prejudice was filed.

This appeal followed.

## **DISCUSSION**

Sadeghi argues the trial court erred in finding the SAC did not sufficiently plead a cause of action for battery, invasion of privacy, and IIED. He contends the SAC is not a sham pleading and that his claims are not barred by workers' compensation exclusivity.

We are not convinced the sham pleading doctrine should be applied here. We also conclude the workers' compensation exclusivity rule does not bar Sadeghi's claims, given the specific circumstances of this case which trigger an exception. We have analyzed Sadeghi's three causes of action and conclude he sufficiently pleaded his battery and IIED claims, but not his invasion of privacy claim. We thus reverse as to the claims for battery and IIED and affirm the order sustaining the demurrer to the invasion of privacy claim without leave to amend.

A.    *Lack of Reporter's Transcript*

As a preliminary matter, we address the fact that the record on appeal does not include a reporter's transcript of the November 21, 2019 hearing on respondents' demurrer to the SAC and the March 10, 2021 hearing on the motion for judgment of dismissal. However, we conclude the absence of a reporter's transcript or suitable substitute is not necessary for our review of the trial court's order sustaining the demurrer. (See *Lin v. Coronado* (2014) 232 Cal.App.4th 696, 700, fn. 2 [where appeal is

12

from sustaining of demurrer, reporter's transcript or suitable substitute is not necessary]; see also *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 699 [reporter's transcript not necessary where appellate issue is "a purely legal issue based on the filings before the trial court"].)

A reporter's transcript might have been needed to permit appellate review of the trial court's decision to deny leave to amend the SAC.  But Sadeghi has not presented any argument on appeal that the trial court abused its discretion in denying leave to amend.  Therefore, a record of the oral proceedings is not necessary for our review.

B.    *Standard of Review*

In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1046 (*King*); *Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 163 (*Dudek*).)

In addition, " '[w]hen a demurrer is sustained *without leave to amend*, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." ' " (*Dudek, supra,* 34 Cal.App.5th at p. 163, italics added.)  Here, Sadeghi shoulders the burden to show a reasonable possibility the operative complaint can be amended to state a cause of action.  (*Id.* at pp. 163–164; *King, supra,* 5 Cal.5th at p. 1050.)  He can make this showing in the first instance to the appellate court.  (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322.)

13

C.    *Applicable Law*

    1.    <u>Demurrers Generally</u>

A demurrer tests the legal sufficiency of the challenged pleading.  (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 5; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The judgment of dismissal after a sustained demurrer must be affirmed if the challenged pleading fails to plead an essential element or if the allegations disclose some defense or bar to recovery.  (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8.)  We are to affirm if any of the grounds for demurrer raised by respondents is well taken and disposes of the three causes of action of the SAC pending before us.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

We accept as true all material facts properly pleaded in the SAC, but do not assume the truth of contentions, deductions, or conclusions of fact and law.  (*Dudek, supra,* 34 Cal.App.5th at p. 154; *Estate of Holdaway* (2019) 40 Cal.App.5th 1049, 1052.) "We give the complaint a reasonable interpretation and treat the demurrer as *admitting all material facts properly pleaded that are not inconsistent with other allegations, exhibits, or judicially noticed facts.*"  (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292, italics added.)  The allegations that we accept as true necessarily include the contents of any exhibits attached to the complaint, and in the event of a conflict between the pleading and an exhibit, the facts contained in the exhibit take precedence over and supersede any inconsistent or contrary allegations in the pleading.  (*Jibilian v. Franchise Tax Bd.* (2006) 136 Cal.App.4th 862, 864, fn. 1; *Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400, 1409; see *Schmier v. City of Berkeley* (2022) 76 Cal.App.5th 549, 553, fn. 4.)

14

2.     Workers' Compensation Exclusivity

California's Workers' Compensation Act (WCA) (Lab.
Code[4], § 3600 et seq.) is a comprehensive statutory scheme that
provides employees an exclusive remedy against their employers
for injuries arising out of and in the course of employment.
(*Melendrez v. Ameron Internat. Corp.* (2015) 240 Cal.App.4th
632, 638 (*Melendrez*); *King, supra,* 5 Cal.5th at p. 1046.)
Ordinarily, an employee's rights against the employer for on-the-
job injuries lie solely under the workers' compensation law—i.e.,
when the "conditions of compensation" are present (§ 3600), the
employer is immune from civil damages liability because workers'
compensation is the injured employee's "exclusive remedy."
(§§ 3600–3602.)

In addition, to prevent employees from circumventing the
exclusivity rule by bringing lawsuits for work-related injuries
against coemployees, who in turn would seek indemnity from
their employers, the Legislature also provides immunity to
coemployees acting within the scope of their employment.
(§ 3601, subd. (a); *Torres v. Parkhouse Tire Service, Inc.* (2001)
26 Cal.4th 995, 1002 (*Torres*).) "If the coemployee was not
'engaged in any active service for the employer' [when the injury
occurred,] the coemployee was not acting within the scope of
employment." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 740
(*Hendy*).)

An essential component of the workers' compensation
"conditions of compensation" is that the injury must have arisen
"out of and in the course of the employment." (See § 3600;
*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 15 (*Shoemaker*).) Section

---

[4]     Undesignated statutory references are to the Labor Code.

15

3600 provides us with a two-prong test to determine whether an injured employee's claim is preempted by the WCA's exclusive remedy provisions.

First, the injury must also occur *in the course of the employment*; this concept ordinarily refers to the time, place, and circumstances under which the injury occurs. (*Melendrez, supra*, 240 Cal.App.4th at p. 639.) Thus, employees are in the course of their employment when they do those reasonable things which the employment contract expressly or impliedly permits them to do. (*Ibid*.) The requirement that the employee be acting in the course of employment "generally means the injury happened at a time when the employee was working and in the place of employment." (*Lee v. West Kern Water Dist.* (2016) 5 Cal.App.5th 606, 624–625 (*Lee*).)

Second, the statute requires that an injury *arise out of the employment*. (*Melendrez, supra*, 240 Cal.App.4th at p. 639.) It has long been settled that an injury arises out of employment when it occurs by reason of a condition or incident of the employment; that is, the employment and the injury must be linked in some causal fashion. (*Ibid*.) "It is a looser concept of causation than the concept of proximate cause employed in tort law." (*Lee, supra*, 5 Cal.App.5th at pp. 624–625.) Whether an employee's injury arose out of and in the course of his employment is generally a question of fact to be determined in light of the circumstances of the particular case. (*Melendrez*, at p. 639.)

Although the "conditions of compensation" may apply (i.e., injury to employee within course and scope of employment), the claim may nonetheless be remediable in an action at law if it falls within one of the few recognized exceptions to the workers'

16

compensation exclusive remedy rule. One such exception expressly provided by the Legislature in section 3601, subdivision (a)(1), is "[w]hen the injury . . . is proximately caused by the willful and unprovoked physical act of aggression of the other *employee*." (*Ibid.*, italics added.) An "unprovoked physical act of aggression" (per § 3601, subd. (a)) is "unprovoked conduct intended to convey an actual, present, and apparent threat of bodily injury." (See *Torres, supra,* 26 Cal.4th at p. 1005.) Stated more simply, an injured employee ordinarily must show that the coemployee acted with the specific intent to injure. (*Id.* at p. 1010; see CACI No. 2811.)

### 3. Sham Pleading Doctrine

Under the sham pleading doctrine, "[i]f a party files an amended complaint and attempts to avoid the defects of the original complaint by either omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may take judicial notice of prior pleadings and may disregard any inconsistent allegations." (*Colapinto v. County of Riverside* (1991) 230 Cal.App.3d 147, 151; see *Hendy, supra,* 54 Cal.3d at pp. 742–743 [affirming an order sustaining demurrer without leave to amend when plaintiff filed an amended complaint omitting harmful allegations from the original complaint].) "Where no explanation for an inconsistency is offered, the trial court is entitled to conclude that the pleading party's cause of action is a sham and sustain the demurrer without leave to amend." (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 447; accord, *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425–426; *Amarel v. Connell* (1988) 202 Cal.App.3d 137, 144 [sham pleading rule applied where allegations in prior complaint that are destructive of the cause of action are omitted in the

17

subsequent pleading *without a valid explanation*].)  " 'A pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective.' " (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 946.)

Earlier pleadings may not be considered "to bind the pleader to an untrue and erroneous admission against interest which was inadvertently contained therein, but which has been subsequently disavowed and corrected in an amended pleading filed by leave of court, in which, or accompanying which, satisfactory explanation is made of the reason which caused the original erroneous statement. . . .  If courts were to bind litigants to inadvertent untrue statements of facts and forbid them the inherent right to correct the false by substituting the true facts, they would become partisans to miscarriages of justice." (*Jackson v. Pacific Gas & Electric Co.* (1949) 95 Cal.App.2d 204, 211.)  Similarly, the reviewing court in *Macomber v. State* (1967) 250 Cal.App.2d 391, 399 explained that the sham pleading doctrine properly may be used to "discourage sham and untruthful pleadings," but concluded the doctrine was not properly applied to the case before it, which was "not a situation where the contradiction of the original allegation carries with it the onus of untruthfulness."

D.    *The Sham Pleading Doctrine Does Not Apply*

Respondents argue the SAC omitted or altered certain relevant allegations pleaded in the original complaint and the FAC.  They maintain the SAC did not allege that Sadeghi's August 7, 2017 termination was stayed until after a meeting with Pinscreen's board of directors, per his request to Li.  Instead, the SAC alleged Sadeghi was terminated from employment immediately at the meeting with Li, and that the altercation took

18

place "after his termination." Respondents also argue the SAC changed the location of the altercation—from within the office building premises to outside the office building. They refer to the complaint and FAC's similar allegations that Sadeghi was restrained by respondents when he "attempted to leave the building through the lobby," indicating he was still in the building, where as the SAC alleged the altercation took place "outside of Pinscreen's premises."

Sadeghi, however, contends the trial court's finding that the sham pleading doctrine applied to the SAC was erroneous. He argues the "amendments made were in response to the trial court's order and involved drastic revision of Sadeghi's causes of action against Respondents, including the removal of evidentiary allegations." He contends he did not amend the pleading to omit harmful allegations; "[t]o the contrary, the [SAC] was drastically amended from its previous form because the trial court ordered it to be revised."

Respondents contend Sadeghi changed the allegations in the SAC so as to avoid the application of the workers' compensation exclusivity rule which was argued in respondents' prior demurrer (to the FAC). They argue the SAC is a sham pleading that omitted or altered harmful allegations to avoid preemption by the exclusive remedy provisions of the WCA.

We disagree.

It is true the original complaint and FAC alleged that Sadeghi requested to meet Pinscreen's board of directors "before the termination decision was final," to which Li agreed; however, the complaint and FAC also alleged that Pinscreen "illegally terminated" Sadeghi "within [his] first working hour" on August 7, 2017—which is what Sadeghi pleaded in the SAC. The original

19

complaint and the FAC each included allegations that differed from other allegations within the body of the same complaint/FAC. Sadeghi argues he made "drastic revisions" and omitted many allegations. And it shows: he went from a 160-page complaint and 274-page FAC to a 35-page SAC. Amendments are allowed where an earlier pleading contains erroneous allegations as a result of mistake or inadvertence. (*Dones v. Life Insurance Co. of North America* (2020) 55 Cal.App.5th 665, 688 (*Dones*).) Honest complainants are not precluded from correcting erroneous allegations or preventing the correction of ambiguous facts. (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 751.)

As to the location of the altercation, the security camera footage included in the SAC shows that the information contained in the complaint, FAC, and SAC are all correct. In fact, respondents began restraining Sadeghi in the building lobby, and continued until it escalated into a physical altercation when outside the building.

Further, the SAC alleged that Li had "refused to produce the security camera footage of the incident during the discovery" and that Sadeghi "later obtained [the footage] from Pinscreen's building security." It is a likely and plausible explanation that after having obtained and reviewed the footage, Sadeghi amended the allegation so as to include that the altercation itself took place immediately outside the building. We remind respondents that the sham pleading doctrine cannot be mechanically applied; it is not intended to prevent honest complainants from correcting erroneous allegations or to prevent the correction of ambiguous facts. (*Dones, supra,* 55 Cal.App.5th at p. 688.)

20

We are thus not convinced the sham pleading doctrine was correctly applied here.

E. *The Trial Court Erred in Sustaining the Demurrer to the Battery Cause of Action*

1. Workers' Compensation Exclusivity Does Not Bar the Battery Claim

"[W]hen a complaint affirmatively alleges facts indicating that the [WCA] applies, no civil action will lie, and the complaint is subject to a general demurrer unless it states additional facts that negate application of the exclusive remedy rule." (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1060.)

We find that while the SAC alleged Sadeghi's injury *arose out of the employment* in that the injury was linked in some causal fashion to employment[5] (*Melendrez, supra,* 240 Cal.App.4th at p. 639)—i.e., the injury would not have happened if Sadeghi was not a Pinscreen employee who had just been terminated—we find the SAC adequately alleged Sadeghi's injury did not occur *in the course of the employment*. Sadeghi was restrained and forced to the ground after having been given written notice of termination of employment and after he left with the work laptop from Pinscreen's office. (See *Lee, supra,* 5 Cal.App.5th at pp. 624–625 [employee acting in the course of employment "generally means the injury happened at a time when the employee was working and in the place of

---

[5]     This causation requirement differs markedly from ordinary tort principles, in that " ' " '[a]ll that is required is that the employment be one of the contributing causes without which the injury would not have occurred.' " ' " (*South Coast Framing, Inc. v. Workers' Comp. Appeals Bd.* (2015) 61 Cal.4th 291, 297–298.)

employment"]; see *Melendrez*, at p. 639.)  Thus, we find the injury did not occur in the course of Sadeghi's employment.

In addition, a close examination of the allegations of the SAC reveals that Sadeghi did adequately plead a battery that met the exception to exclusivity stated in section 3601, subdivision (a)(1).  First, the allegations provide that Pinscreen is a software startup that specializes in the generation of animated 3D face models/avatars, employing Li (its chief executive officer), respondent Chen (its chief financial officer), and the other respondents (its employees).  We cannot think of a reason or logical connection in which physically assaulting or attacking a coemployee is in the course of respondents' employment with Pinscreen.  Assaulting and/or battering Sadeghi is not one of "those reasonable things which [their] contract with [their] employment expressly or impliedly permits [them] to do." (*Melendrez*, *supra*, 240 Cal.App.4th at p. 639.)  We agree with Sadeghi that this qualifies as conduct in which an employee steps out of its proper role and is of questionable relationship to their employment at Pinscreen.  (See *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 713, 717–718, 722–723 (*Fermino*).)

Second, the allegations of the SAC confirm Sadeghi's injury was proximately caused by the "willful" and "unprovoked" physical act of aggression of the other employees—here, respondents.  (§ 3601, subd. (a)(1).)  Respondents argue Sadeghi did not allege a "willful intent to injure" in his SAC.  We disagree. The SAC provides respondents "*intentionally* touched and grabbed Sadeghi and his backpack," "forcefully restrained him, physically attacked him, and violently shoved him to the ground." In situations where employees commit violent, injurious acts against a coemployee, the trier of fact could reasonably infer an

22

intent to injure to take the actions outside the exclusivity rule's protection. (See *Torres, supra,* 26 Cal.4th at p. 1009.) The information alleged amounts to "conduct intended to convey an actual, present, and apparent threat of bodily injury." (*Id.* at p. 1005.)

Moreover, respondents' physical act of aggression is "unprovoked," in that the "initial physical aggressor[s]" (§ 3600, subd. (a)(7)) were respondents, not Sadeghi. This is consistent with section 3600's ban on compensation to a physical aggressor who *first* introduces an element of physical violence into the confrontation, thus creating the risk of injury. (*Torres, supra,* 26 Cal.4th at pp. 1004–1005.) Respondents' argument that Sadeghi "provoked" the altercation by attempting to leave Pinscreen with the work laptop is not well taken, and is not supported by case law. (See *ibid.*)

Respondents' conduct transgressed the limits of the compensation bargain and falls outside the workers' compensation scheme. Because Sadeghi's battery cause of action included allegations that indicated these were unprovoked physical acts of aggression, he met the exception to workers' compensation exclusivity.

2.    The SAC Alleged Sufficient Facts to Constitute Battery

The elements of a cause of action for civil battery are: "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 526–527.)

23

The pleading alleges a harmful or offensive physical contact from respondents grabbing Sadeghi and his backpack, forcefully restraining him, physically attacking him, and violently shoving him to the ground. Sadeghi alleged the contact was "non-consensual." He also alleged he was harmed by the altercation and suffered injuries to his left eye and right shoulder, requiring medical attention and physical therapy. He sought psychotherapy and suffered from PTSD.

Based on the foregoing, the trial court should have overruled the demurrer to the SAC's battery claim.

F. *The Trial Court Properly Sustained the Demurrer to the Invasion of Privacy Cause of Action*

    1. <u>Workers' Compensation Exclusivity Does Not Bar the Invasion of Privacy Claim</u>

Although the nature of the harm from breach of the right to privacy constitutes a personal injury that would otherwise fall within workers' compensation exclusivity, such claims fall within an exception for misconduct outside the normal risk of employment. (*Operating Engineers Local 3 v. Johnson* (2003) 110 Cal.App.4th 180, 187 (*Operating Engineers*).)

As set out above, we find the SAC alleged Sadeghi's injury did not occur *in the course of the employment*, in that the injury occurred after Sadeghi was terminated from employment and after he left Pinscreen's office with the work laptop. Thus, the alleged invasion of privacy did not occur in the course of Sadeghi's employment.

2.     The SAC Did Not Allege Sufficient Facts to
        Constitute Invasion of Privacy

The common law tort of invasion of privacy by intrusion has two elements: (1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person.  (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 231.)  Sadeghi must show respondents "penetrated some zone of physical or sensory privacy surrounding" him and that he had an objectively reasonable expectation of privacy.  (*Id.* at pp. 231–232.)

We have reviewed the pleadings and find Sadeghi has not adequately alleged that he had an objectively reasonable expectation of privacy in the contents of the work laptop.

Upon being hired by Pinscreen, Sadeghi signed an employment contract that expressly provides he agreed and acknowledged that he has "*no expectation of privacy* with respect to the Company's telecommunications, networking or information processing systems . . . and that [his] activity and any files or messages on or using any of those systems *may be monitored or reviewed at any time without notice*."  (Italics added.)  Sadeghi agreed that "any property situated on the Company's premises and owned by the Company . . . is *subject to inspection by Company personnel at any time with or without notice*."  (Italics added.)  The contract additionally specified that "at the time of termination of the [work] relationship, [Sadeghi] *will deliver to the Company (and will not keep in [his] possession . . .) any and all devices . . .* or property . . . belonging to the Company."  (Italics added.)

Sadeghi argues he had a reasonable expectation of privacy in his personal backpack. However, given the unique circumstances of this case, we agree with respondents that this is a distinction without a difference, as an employee could evade Pinscreen's right to inspect or review the work laptop simply by placing it inside his backpack, "thereby creating an impenetrable force field of privacy around that [work laptop] precluding any encroachment."

As Sadeghi has not adequately pleaded facts to state an invasion of privacy claim, it fails on demurrer.

G.     *The Trial Court Erred in Sustaining the Demurrer to the IIED Cause of Action*

We preliminarily note that because we concluded Sadeghi did not plead sufficient facts to establish invasion of privacy, his cause of action for emotional distress fails to the extent it is tethered to the invasion of privacy claim. We only address his IIED claim as derivative of the battery claim.

1.     <u>Workers' Compensation Exclusivity Does Not Bar the IIED Claim</u>

The same rules specified above apply to on-the-job emotional distress injuries. So long as the basic conditions of compensation are otherwise satisfied (§ 3600) and the employer's conduct does not exceed the risks inherent in the employment relationship, an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation. (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 754.)

Respondents argue that in the event we find the battery claim was not subject to workers' compensation exclusivity, the IIED claim is still preempted by the exclusive remedy rule because there is no applicable fundamental public policy. Respondents' argument has no merit, as that is but one instance that circumvents application of the WCA's exclusivity. Emotional distress actions based on the outrageous conduct of employers and/or fellow employees will be barred by workers' compensation exclusivity if the underlying conduct is a "normal" part of the employment relationship, such as demotion, promotion, criticism of work practices, and friction in negotiations as to grievances. (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 (*Cole*).) This is so even if the conduct could be characterized as "manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance." (*Ibid.*) However, conduct in which an employer or employee steps out of its proper role, or conduct of questionable relationship to the employment, is not encompassed within the compensation bargain and is not subject to the exclusivity rule. (*Fermino*, *supra*, 7 Cal.4th at pp. 713, 717–718, 722–723.)

As already discussed, the conditions of compensation are not present as Sadeghi's injury did not occur *in the course of the employment*. He was restrained and forced to the ground *after* having been given written notice of the immediate termination of his employment and *after* having left Pinscreen's office with the work laptop. (See *Lee*, *supra*, 5 Cal.App.5th at pp. 624–625.)

Furthermore, dismissal from employment is generally a normal risk inherent in an employment relationship; it necessarily arises from employment because it is an event ending the employer-employee relationship. (*Shoemaker*, *supra*,

27

52 Cal.3d at pp. 11, 18, 25.) Thus, unless the employee's discharge was accompanied by misconduct exceeding the normal risks of the employment relationship or the discharge violates some fundamental public policy, consequential employee emotional distress is not remediable in an action at law. (*Id.* at pp. 19–20 [injuries arising from termination of employment "ordinarily arise out of and occur in the course of the employment"].)

Ordinarily, reprimands by a supervisor, and the resulting anxiety, embarrassment and anguish, are a normal part of the employment relationship. (*Operating Engineers*, *supra*, 110 Cal.App.4th at p. 189.) This is so even where "tempers flare and the employer engages in conduct rising to the level of intentional infliction of emotional distress." (*Ibid.*) However, a supervisor's intentional dissemination of the reprimand to other employees having no interest in the matter may "in extreme circumstances exceed the known and inherent risks of the workplace." (*Id.* at p. 190.)

Here, Sadeghi was not only terminated from employment, he was also physically attacked and injured while leaving the building. Respondents were not acting within the scope of their employment when they "restrained," "grabbed," and "physically attacked" Sadeghi. As explained above, respondents' conduct thus exceeded the normal risks of the employment relationship. The SAC adequately alleged that respondents' willful and unprovoked physical act of aggression caused Sadeghi's emotional injuries as well as his physical injuries. The conduct inflicting emotional distress similarly lies outside the purview of the WCA's exclusivity provision. (*Cunningham v. FedEx Express* (9th Cir. 2017) 693 Fed.Appx. 561, 562.)

28

## 2. The SAC Alleged Sufficient Facts to Constitute IIED

A cause of action for IIED requires: (1) extreme and outrageous conduct by respondents with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the respondents' outrageous conduct. (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 486.) Conduct is considered outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Ibid.*)

The three elements of IIED are adequately pleaded in the SAC. Respondents' "extreme and outrageous actions caused Sadeghi to suffer severe mental and emotional distress due to . . . being brutally battered, forcefully invaded, and physically injured" *all for the purpose of retrieving a laptop*. This is in no way a normal part of the employment relationship. (*Cole, supra*, 43 Cal.3d at p. 160.) Sadeghi was diagnosed with PTSD as a result of the battery and sustained physical injuries to his left eye and right shoulder. The battery he experienced was "of such substantial and enduring quality that no reasonable person in civilized society should be expected to endure them." Sadeghi sought psychotherapy as a result.

Accepting these allegations as true, the SAC sufficiently states a cause of action for IIED against respondents.

## H. *Sadeghi Forfeited the Issue of Whether the Trial Court Erred in Denying Him Leave to Amend the Invasion of Privacy Claim*

The trial court sustained the demurrer without granting Sadeghi leave to amend the SAC as to respondents. As we find

sufficient the allegations in support of the battery and IIED claims, the only claim left subject to amendment is the invasion of privacy claim.

" 'Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment' " so long as the plaintiff has shown " 'in what manner he can amend [the] complaint and how that amendment will change the legal effect of [the] pleading.' " (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) Sadeghi shoulders the burden to show a reasonable possibility the defect in the SAC can be cured by amendment; if it can, the trial court abused its discretion in sustaining the demurrer without leave to amend. (*Dudek, supra,* 33 Cal.App.5th at pp. 163–164.)

Sadeghi has not proposed an amendment that would cure the defects and has not provided any argument or citation to the law. He provides one sentence on the topic referencing the applicable standard of review. That is not enough. The burden is on the Sadeghi to demonstrate how he can amend the SAC's invasion of privacy cause of action and how the proposed amendment will change the legal effect of the pleading. (*Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 902.) In the absence of proposed new facts and failure to provide adequate legal authority and analysis to support his contention, it is forfeited. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)

## DISPOSITION

The judgment of dismissal as to the battery and IIED causes of action is reversed.  The order sustaining the demurrer as to the invasion of privacy cause of action is affirmed.  Appellant shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.